DAVID CARROLL *vs.* THE CONNECTICUT COMPANY.

Third Judicial District, Bridgeport, October Term, 1909.

BALDWIN, C. J., HALL, PRENTICE, THAYER and RORABACK, Js.

Drivers of street-railway cars, as well as those of all other vehicles, are bound, in their use of the public highways, to exercise reasonable care to avoid collision.

The failure of the driver of a vehicle to look back to see if a street-railway car is approaching from the rear, before turning onto the track in order to avoid a coal cart backed up to the curb across his path, is not necessarily and as matter of law negligence. Whether, in so doing, he exercised reasonable care, is a question of fact for the determination of the jury in view of all the other circumstances in the case.

Argued October 28th—decided December 17th, 1909.

ACTION to recover damages for an injury to the plaintiff's horses and wagon, alleged to have been caused by the negligence of the defendant, brought to the Superior Court in New Haven County and tried to the jury before *Shumway, J.*, who directed a verdict for the defendant, from the judgment upon which the plaintiff appealed. *Error and new trial ordered.*

*Theodore E. Rogers*, for the appellant (plaintiff).

*James F. Berry*, for the appellee (defendant).

RORABACK, J. The plaintiff introduced evidence tending to prove these facts: About nine o'clock in the forenoon of September 18th, 1908, a sand-car belonging to the defendant struck a dump-cart and a pair of horses in charge of one Riggs, a servant of the plaintiff. The place of the collision was on North Main Street, one of the principal thoroughfares in the city of Waterbury. The turn-out or passing point for cars was about seven hundred feet north

of the place where the collision occurred. The plaintiff's team and the car were both going in a southerly direction. About two minutes before the collision, a regular passenger-car going south passed the plaintiff's servant and team. Shortly after the passage of this car the plaintiff's servant turned upon the trolley-track for the purpose of passing a team which was backed up to the curb unloading coal. The car which collided with the plaintiff was an extra car. The motorman in charge of the car had an unobstructed view of the plaintiff's team, and of the wagon backed up to the curb, for a distance of more than five hundred feet. No gong was sounded nor any other warning given of the approach of the car. The car was proceeding at a dangerous rate of speed, namely, from twenty to thirty miles an hour. A car under proper control at this point should not have been going more than four or five miles an hour. Both rails of the trolley-track had been sanded. The driver started to turn onto the track about seventy-five feet from the point where the accident occurred. He did not look before turning onto the trolley-track, because a car had just passed him and he did not expect another. The defendant operated its regular trolley-cars on North Main Street at regular intervals of fifteen minutes, and sometimes oftener.

After the plaintiff rested his case, the defendant moved for a direction to the jury to return a verdict in its favor. This motion having been argued by counsel for both parties, the jury were then instructed to return a verdict for the defendant because the injury was caused by the negligence of Riggs, the plaintiff's driver. This action of the court is assigned as error.

No claim is made that there was not sufficient evidence of the defendant's negligence to require the submission of this cause to the jury for its decision. The defendant's contention is that the plaintiff did not sustain the burden of proof upon the question of contributory negligence:

that the accident was the result of the plaintiff's negligence in placing himself in a position of danger, when he knew that if a trolley-car passed it would be liable to strike him, and that he did not look or make any use of his senses to ascertain if a car were approaching.

Electric cars have their tracks in the highway where all vehicles have a right not merely to cross, but to travel. In view of the inability of the cars to leave their tracks, it is the duty of vehicles not to obstruct them unnecessarily, and to turn to one side when they meet them; but subject to that and to the respective rights of the two, a car and a wagon owe reciprocal duties to use reasonable care on each side to avoid collision. *Galbraith* v. *West End Street Ry. Co.*, 165 Mass. 572, 580, 43 N. E. 501. Being of great size and weight, trolley-cars are capable of being moved at a very high rate of speed, and they should at all times be kept so under control as not to expose others to unreasonable hazard. *Currie* v. *Consolidated Ry. Co.*, 81 Conn. 383, 386, 71 Atl. 356. Notwithstanding the previous negligence of a plaintiff, if, at the time the injury was done, it might have been avoided by the exercise of reasonable care on the part of the defendant, the defendant will be liable for the failure to exercise such care. *Smith* v. *Connecticut Ry. & Ltg. Co.*, 80 Conn. 268, 270, 67 Atl. 888; *Grand Trunk Ry. Co.* v. *Ives*, 144 U. S. 408, 12 Sup. Ct. Rep. 679; *Carrahar* v. *Boston & Northern Street Ry. Co.*, 198 Mass. 549, 85 N. E. 162. If the motorman became aware that the driver of the team was not going to get off the track, it was the motorman's duty to do what he reasonably could to avoid the collision. The mere fact that the servant of the plaintiff failed to look before turning onto the track, is insufficient to charge the plaintiff with contributory negligence; all the facts and circumstances as they existed at the time must be taken into consideration. *Fay* v. *Hartford & Springfield Street Ry. Co.*, 81 Conn. 330, 71 Atl. 364, 734. In this case the court held that while the failure to look and

listen before crossing a street-railway track was not negligence *per se*, yet an apparently inexcusable failure to make use of one's senses to escape a known danger, which might by such use have been avoided, was negligence as matter of law.

In the present case the passenger-car had passed; it became necessary for the plaintiff's servant to turn onto the track in order to pass the team backed up to the curb. The motorman had an unobstructed view of the plaintiff's team, and of the team backed up against the curb, for a distance of more than five hundred feet. He knew, or should have known, that the driver of the plaintiff's team might turn onto the track, and that if he did so a collision would necessarily follow. No effort was made to check the speed of the car, which was proceeding at a dangerous rate; no gong was sounded or warning given of the approaching car. The team was traveling at the rate of three or four miles an hour, and after starting to turn onto the track it proceeded from fifty to sixty feet. During this time the car must have gone three or four hundred feet.

If the jury believed that the motorman did see the plaintiff's cart, and that it was proceeding in the ordinary way around the coal team and clearing the tracks with reasonable speed, and that in so doing it was in, or coming into, a position of danger, they might have found that due care required the motorman to move slowly or stop until the plaintiff's team was out of the way.

Whether the motorman, in the exercise of due care, should have slowed up or stopped the car, was a question of fact which should have been submitted to the jury with the other issues in the case.

There is error and a new trial is ordered.

In this opinion the other judges concurred.