JAMES H. ELLIOTT, ADMINISTRATOR, *vs.* THE NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY.

First Judicial District, Hartford, May Term, 1911.

HALL, C. J., PRENTICE, THAYER, RORABACK and WILLIAMS, Js.

A traveler on the highway who approaches a railroad grade-crossing known to him to be unusually dangerous owing to the restricted view of the track and the difficulty of hearing the noise and warning signals of an oncoming train, is bound to exercise care proportioned to the danger of the situation, and is guilty of negligence if he attempts to cross without any other precaution than the inadequate one of merely looking down the track.

It is immaterial whether the alleged negligence of the defendant has been established or not, provided the plaintiff's own negligence is a proximate cause of his injury.

Notwithstanding the negligence of a highway traveler in attempting to cross a railroad track at grade ahead of an approaching train, he may recover provided the servants of the railroad company, after discovering his peril, neglected some duty they owed him, the performance of which would have averted his injury. Under such circumstances the proximate cause of the injury is the supervening neglect of the railroad company, rather than the traveler's own carelessness.

In the present case the plaintiff claimed that after his intestate was discovered on the crossing by the defendant's enginemen, they gave no warning whistle, nor did they sand the track, apply the emergency brake, or reverse the engine. *Held* that inasmuch as it was abundantly shown that these acts would have been of no avail, there was no evidence of supervening negligence upon the part of the defendant upon which to base a verdict for the plaintiff.

Argued May 2d—decided June 15th, 1911.

ACTION to recover damages for personal injuries resulting in the death of the plaintiff's intestate and the destruction of his property, brought to the Superior Court in Litchfield County and tried to the jury before *Shumway, J.;* verdict and judgment for the plaintiff for $5,335, and appeal by the defendant from the

refusal of the trial court to set aside the verdict as one against the evidence. *Error and new trial ordered.*

*Donald T. Warner* and *Joseph F. Berry,* for the appellant (defendant).

*Thomas J. Wall,* for the appellee (plaintiff).

THAYER, J. The only question raised by this appeal is whether it was error for the trial court to refuse to set aside the plaintiff's verdict. The plaintiff's intestate, Tetro, was struck and killed by the defendant's train at a highway crossing just south of the East Litchfield station. He was familiar with the character of the crossing and with the running of the defendant's trains. He approached the crossing from the west. All the evidence tends to prove, and the plaintiff alleged and claimed the fact to be, that to one thus approaching it, the crossing is a very dangerous one, for the reason that the railroad curves to the west a short distance south of the crossing and passes through a rock-cut, so that a train approaching from the south cannot be seen by the traveler until each is very near to the crossing; and the rocks and high ground and other intervening obstacles between the train and the traveler so obstruct or deflect the noise of the train and the warning signals that it is difficult, if not impossible, for the traveler upon the highway near the crossing to hear them. Tetro was seated in a heavy wood-wagon, driving a pair of horses attached thereto. The body of the wagon was twelve feet long, and he was sitting upon a bag of flour near the middle of the wagon. The ground was frozen, and the wagon made considerable noise. The horses were walking at the rate of four miles per hour. Without stopping to look or listen, he drove upon the track in front of a regular train which

was approaching from the south, and which was then due at the station. The locomotive struck the team between the horses and the front end of the wagon. It is apparent that the team, from the horses' heads to the rear of the wagon must have been at least twenty feet in length, and at the rate at which it was moving it would be at least seven seconds from the time the horses reached the danger line west of the track until the rear of the wagon passed the danger line on the east. A train three hundred and fifty feet away at the time the horses reached the point of danger would, if going at the rate of thirty-five miles per hour, reach the crossing before the wagon had crossed the track so as to be out of danger. From the middle of the track at the crossing, a person can see down the track only three hundred and thirty-one feet; when in the highway fifteen feet west of the track he can see down the track only two hundred and forty-six feet; and when twenty feet west only two hundred feet. The evidence shows that when the horses were on the track both they and their driver were aware of the approach of the train, and the horses "started to prance," and the driver attempted to urge them forward by slapping them with the reins.

The intestate's conduct, as thus established by the evidence adduced by the plaintiff, falls short of proving that he was not guilty of contributory negligence. He was bound to exercise care proportioned to the danger of the situation. The ordinary difficulty in hearing an approaching train and its warning signals was augmented by the noise made by his wagon. So far as appears, he drove upon the track, with full knowledge of the danger, without taking any precaution to know whether there was a train approaching. To look, under the circumstances in which he was placed, was inadequate, for it might not inform him whether a train was

in such proximity to the crossing as to make his transit dangerous. It was his duty under such circumstances to take other precautions. It was not shown that he took any. If it be admitted, therefore, that the plaintiff established the alleged negligence of the defendant in failing to protect the crossing by a gate or flagman, and in failing to give the statutory warnings, and in running its train at too high a rate of speed, still, unless the injury was caused by supervening negligence of the defendant's servants, the plaintiff was not entitled to a verdict, because he failed to sustain the burden of proof that his intestate was free from contributory negligence. *Fay* v. *Hartford & Springfield Street Ry. Co.*, 81 Conn. 330, 337, 71 Atl. 364; *Cottle* v. *New York, N. H. & H. R. Co.*, 82 Conn. 142, 144, 72 Atl. 727.

If the defendant's servants, after they knew or ought to have known of Tetro's peril upon the crossing, neglected some duty which they owed him and the performance of which would have avoided his injury, such negligence would be the proximate cause of the injury, and his own negligence in driving upon the track would be only a remote, and not a proximate, cause thereof, and would not prevent the plaintiff's recovery. *Smith* v. *Connecticut Ry. & Ltg. Co.*, 80 Conn. 268, 270, 67 Atl. 888; *Elliott* v. *New York, N. H. & H. R. Co.*, 83 Conn. 320, 322, 76 Atl. 298. As showing such negligence on the part of the defendant's servants, the plaintiff claimed that after they saw Tetro's danger they gave no warning whistle, did not sand the track, and did not reverse the engine. That they did not do these things was established by their own testimony. But there was no evidence that if these things had been done the accident would have been averted. On the contrary, there was abundant evidence that sanding the track and reversing the engine after the servants knew or ought to have known of the danger would not have

averted the injury. The fireman saw Tetro upon the track as soon as the locomotive came into view of the crossing. The latter then saw the locomotive, and was urging his horses forward to avoid a collision. The defendant owed no duty to then warn him of what he already knew, and such warning could not have prevented his injury.

The plaintiff also claimed that the emergency brake was not applied after the defendant was chargeable with knowledge of Tetro's peril at the crossing. There was nothing to support this claim, except the speed of the train, the fact that the train did not stop until it reached the station two hundred and twenty feet north of the crossing, and the testimony of several passengers, who were aboard the train, that they did not notice the effect upon the train of the application of any brakes before the stop was made. There was testimony from the engineer and fireman of the train that the full service application of the brakes had been made for the purpose of stopping the train at the East Litchfield station before the curve was rounded and the crossing and station came into view, and that as soon as they saw Tetro the brake was thrown into full emergency. Several passengers testified that they noticed that the brakes were applied. There was uncontradicted testimony that after the full service application has been made and the brakes equalized, the throwing of the lever into full emergency has no effect upon the train, and the engineer testified that it had no effect upon the speed of the train in question, and that he threw the lever into emergency as being the only thing he could do. There was also uncontradicted testimony that, if there had not previously been the full service application, the reversing of the engine or an emergency application of the brake would not have stopped the train within the distance intervening

between the crossing and the farthest point from which the fireman and engineer could first have observed Tetro's peril. Some of this testimony was from competent experts, and those who apparently had no interest in the parties to, or the result of, the suit. If the jury disbelieved the fireman and engineer, that the brakes were applied in the manner stated, they had no evidence to justify them in finding that if applied, or if the engine had been reversed after Tetro's predicament should have been known to them, the accident would have been prevented. They could not be allowed to find such a fact, as a matter of mere conjecture, in the face of positive evidence to the contrary. There was no evidence of supervening negligence which could have caused the death of Tetro, and the defendant's motion to set the verdict aside should have been granted.

When this case was before us at a former time (83 Conn. 320, 76 Atl. 298), the appeal for verdict against the evidence was not before us, the appeal on that ground not having been perfected; and the evidence was not before us for the purpose of determining that question. The evidence was filed for the purpose of obtaining a correction of the finding, which was refused. So far as the opinion in that case refers to the evidence or the sufficiency thereof, it is to be taken to refer to the statement of the evidence as contained in the finding.

There is error and a new trial is ordered.

In this opinion the other judges concurred.