ANNA NEHRING, EXECUTRIX, *vs.* THE CONNECTICUT COMPANY.

Third Judicial District, Bridgeport, April Term, 1912.

PRENTICE, THAYER, RORABACK, GEORGE W. WHEELER and RALPH WHEELER, Js.

The so-called doctrine of the last clear chance is not a newly-discovered legal principle, limiting the operation of the contributory negligence rule, but is merely a logical and inevitable corollary of the long-accepted doctrine of actionable negligence and contributory negligence.

To furnish a basis for applying the doctrine of contributory negligence, there must have been a concurrence of negligent conduct on the part of the injured person with that of the defendant. The negli-

gence of the injured person must, furthermore, have been of such a character, and so related to the resulting injury, as to be properly considered an efficient or proximate cause of it.

It follows that the decisive question in each case, where an injured party is found to have been at fault from his failure to exercise the required degree of care, resolves itself into the question whether that fault was or was not a proximate cause of the injury, and that the answer to that question will infallibly determine whether or not it will bar a recovery.

It is only to conduct of the injured person, negligent in itself, but not connected with the injury as its proximate cause, and not therefore a bar to an action for negligence of the defendant, that the so-called doctrine of the last clear chance relates.

Where, after the plaintiff's peril, to which he has carelessly exposed himself or his property, becomes known to the defendant, the latter introduces into the situation a new and independent negligent act without which there would have been no injury, the new negligence will be regarded as the sole proximate cause of the injury.

Where the plaintiff has carelessly placed himself in a position of danger from which he either cannot, or cannot reasonably, escape after the discovery of his danger, and the defendant, after his discovery that the plaintiff is in the situation described, fails to use reasonable care to save him from harm, and harm results from such failure, the defendant's want of care will be regarded as the sole proximate cause of the injury and the plaintiff's conduct a remote cause only.

Where the conditions are as last stated, save that means of escape in the exercise of reasonable care are open to the plaintiff, but it is apparent to the defendant that the former will not avail himself of them in season to enable the latter in the exercise of reasonable care to avoid the doing of harm, the situation being one in which the plaintiff does nothing to create or materially change the already existing condition of exposure by active conduct, but remains passive and can be regarded as careless only in that he does not awake to his surroundings and do what reasonable prudence requires, the plaintiff's want of care will be regarded as a remote and not a proximate cause.

Where the plaintiff's negligence continues as an active agency in producing the resulting injury down to the time of its occurrence, or until it is too late for the defendant in the exercise of reasonable care to save him, his conduct must be regarded as a concurring efficient cause, proximate and not remote, of the injury. To hold that in such a case the plaintiff could recover for the injury would be to ignore the fundamental principle of the law of contributory negligence.

Where injury is wilfully or wantonly inflicted, the defense of contributory negligence is not available.

Full and adequate means of knowledge open to a person when he acts, are, under ordinary circumstances, treated as the equivalent of knowledge.

It is immaterial whether the acts of the defendant which cause an injury are done with actual knowledge of the exposure of another person to danger, or under circumstances which make it the defendant's duty to exercise reasonable care to ascertain the facts, and where the exercise of such care would have given him the knowledge.

The neglect of the duty of acquiring knowledge, if such duty is owed to others for their safety, may furnish a basis of liability, even where there is neither actual nor constructive knowledge. But this duty must be found in the circumstances; and caution must be exercised that it be not imposed where the circumstances do not fairly require it, nor extended beyond the limits which the circumstances fairly justify.

In the present case it appeared from the evidence, all of which was introduced by the plaintiff, that her intestate, a man of defective hearing, started to cross on foot a city street on which were trolley tracks, at an acute angle to such tracks, and did not look about or take any precaution for his safety, but kept steadily on his way until he stepped upon the tracks and was struck by the fender of a car which was approaching from the rear. *Held* that under such circumstances it was not error for the trial court to direct a verdict for the defendant.

Argued April 9th—decided July 19th, 1912.

ACTION to recover damages for injuries resulting in the death of the plaintiff's intestate and alleged to have been caused by the defendant's negligence, brought to the Superior Court in New Haven County and tried to the jury before *Holcomb, J.,* who directed the jury to return a verdict for the defendant, from the judgment upon which the plaintiff appealed. *No error.*

Main Street in Ansonia runs substantially north and south, and is about forty-one feet wide between curbs. A single line of trolley tracks extends through the middle of it. Bank Street crosses it at substantially right angles. October 11th, 1910, Paul Nehring, the plaintiff's intestate, left his horse and wagon standing beside the west Main Street curb a short distance south of Bank Street. He visited a baker's wagon which was

standing by the curb on the opposite side of Main Street and some short distance north of Bank Street, and there made a purchase. Having done so, he started with the expressed purpose of going to his own wagon, and walked in a direct line toward it. The route which he thus took, and continued until he was injured, would have taken him diagonally across the street and trolley tracks, approaching the latter at a sharp acute angle. He kept on his way without stopping until he was struck by the fender of a car which came upon him from the north at a fairly fast rate of speed. He was hit in the rear upon the right side. In his fall he was drawn under the car in such a way that death resulted. No one of the several witnesses of the affair, or portions of it, saw him look about him as he walked across the street, or take any other precautions for his safety. The witnesses all testified to his going directly forward in his course without, as far as they observed, giving apparent attention to anything about him. He was somewhat hard of hearing. The defendant introduced no evidence, but rested upon the close of the plaintiff's case, and asked that a verdict be directed in its behalf.

The facts bearing upon the alleged negligence of the defendant need not be recited, as they have no pertinence to the opinion. It was not claimed that the injury was wilfully or maliciously caused.

*Robert L. Munger*, for the appellant (plaintiff).

*John P. Kellogg*, with whom was *Joseph F. Berry*, for the appellee (defendant).

PRENTICE, J. It is clear and unquestioned that there was evidence, justifying its submission to the jury, tending to establish the defendant's negligence in the premises directly contributing to produce the fatal

injury which the plaintiff's intestate suffered. The verdict for the defendant was directed upon the ground that the plaintiff had failed to present evidence, sufficient to go to the jury, tending to establish the intestate's freedom from contributory negligence. Plaintiff's counsel in his brief formally takes issue with this conclusion of the court, asserting that the evidence was such as entitled the plaintiff to go to the jury upon the question of the intestate's negligence. It is apparent, however, that little reliance is placed upon this particular claim, and that the contention that the court erred must fail unless the appeal which is made to the so-called doctrine of "the last clear chance," otherwise known as supervening or intervening negligence, is well made. This appeal is urged with vigor, so that the plaintiff's main contention, which alone calls for serious consideration, is that, notwithstanding the intestate's failure to use ordinary care, the defendant is liable through the operation of the doctrine referred to, which, it is said, the court disregarded.

The appeal which is thus made is one which has become quite common of late, and it is repeated in several other cases pending for decision. It is apparent from the variety of circumstances under which these claims are made, and the positions which are assumed in support of them, that there exists in many quarters a by no means clear understanding of the doctrine thus invoked. This is by no means strange in view of the lack of consistency and intelligent statement which characterizes the numerous cases which have dealt with the subject, and the confused condition in which many of them have left it. It is hard to find a branch of the law which has received more unsatisfactory and inadequate treatment at the hands of the courts than has this, or one which is more in need of intelligent and consistent determination. The cases involving in some

way the matter are numerous, and one must be hard to suit who cannot find in some of them implied or express support for his preconceived view. The most difficult thing to find is a clear expression of fundamental principles, and logical and consistent statements of their application to varying conditions. The late Seymour D. Thompson, in his work on Negligence (Vol. I, § 231 *et seq.*), calls attention to this feature of the situation, and makes some forcible observations concerning the positions which have been taken by some courts.

It is fortunate for us, however, that this court early asserted, and has since held true to, one general position. We are thus spared the embarrassment, under which text-writers and not a few courts have labored, of dealing with a variety of dicta or decisions troublesome to harmonize with each other, if not with sound reason. It is further our good fortune that the position thus early assumed in this jurisdiction is one which stands the test of reason, comports with public policy best of all, and has come to claim the concurrence of the best authorities, courts and text-writers.

The notion appears to be more or less prevalent that this so-called doctrine is a discovery of recent years, that it embodies a new legal principle, and that this principle is one which invades the domain formerly assigned to contributory negligence, and sets limitations upon the operation of this latter doctrine so long and so deeply imbedded in English and American jurisprudence. This is by no means true as respects either the age or the character and scope of the principle which it embodies. The names by which it has come to be known are indeed of recent origin, and perhaps its present vogue and the misconception which prevails as to its true place in the law of negligence are due in part to its thus being given an independent status in

the terminology of the law. In fact, the principle is no modern discovery. It runs back to the famous "Donkey Case" of *Davies* v. *Mann*, 10 Mees. & W. 546, decided in 1842. It was distinctly recognized by this court in 1858 in *Isbell* v. *New York & N. H. R. Co.*, 27 Conn. 393. It was then not only recognized, but its true place in the law was assigned to it. It was shown to be no independent principle operating by the side of, and possibly overstepping the bounds of, other principles, but merely a logical and inevitable corollary of the long accepted doctrine of actionable negligence as affected by contributory negligence. The definition of its place, which was made in the clear-cut language of JUDGE ELLSWORTH, inexorably forbade that it could by possibility run counter in its application to the contributory negligence rule. This fundamental principle we have steadily adhered to. *Smith* v. *Connecticut Ry. & Ltg. Co.*, 80 Conn. 268, 270, 67 Atl. 888; *Elliott* v. *New York, N. H. & H. R. Co.*, 83 Conn. 320, 322, 76 Atl. 298, 84 Conn. 444, 447, 80 Atl. 283.

There are, indeed, cases which give countenance to a different view upon this latter subject. But their dicta, oftentimes, not to say generally, uttered without an apparent comprehension of their logical consequence, would create havoc with the law, and leave it guideless, or with two conflicting guides. A sober second thought is, however, fast correcting this mistake, so that there has already come to be a general concurrence of the well-considered authorities in the view which has been taken in this jurisdiction.

The contributory negligence rule has no practical application save in cases where the defendant has been guilty of actionable negligence. It proceeds upon the theory that whenever a person injured has contributed essentially to his injury by his own negligent conduct, the law will not give him redress, even against another

who may have been directly instrumental in producing the result. To furnish a basis for its application there must have been a concurrence of negligent conduct. This negligent conduct, furthermore, must have been of such a character and so related to the result as to entitle it to be considered an efficient or proximate cause of it. If there is a failure to use due care on the part of either party at such a time, in such a way or in such a relation to the result that it cannot fairly be regarded as an efficient or proximate cause, the law will take no note of it. *Causa proxima, non remota, spectatur.*

It thus logically follows that, although a plaintiff may have failed to exercise reasonable care in creating a condition, or in some other way, which cannot be fairly said to have been the proximate cause of the injuries of which he complains, the contributory negligence rule cannot be invoked against him. The question with respect to negligent conduct on the part of a person injured through the negligence of another, as affecting the former's right to recover, thus becomes resolved in every case into one as to whether or not that conduct of his was a proximate cause of the injury. If it was, then the contributory negligence rule is applicable, and the plaintiff will by its operation be barred from recovery. If it was not, that rule has no pertinence to the situation, since there was no concurrence of negligence, without which there can be no contributory negligence in the legal sense. It is conduct of the latter kind—that is, conduct careless in itself, but not connected with the injury as a proximate cause of it—to which the so-called doctrine of "the last clear chance" relates, and that doctrine embraces within its purview such conduct only.

This being so, it may well be questioned whether the doctrine deserves a classification and a name as of an

independent principle. But if, for convenience sake or other reason, it is to be dignified in that way, it is apparent that there is no manner of inconsistency between it and the contributory-negligence rule, ·and that the domain of the latter rule is in no way invaded or narrowed by a full recognition of it. It follows that the decisive question in each case, where a plaintiff injured is found to have been at fault in the premises from his failure to exercise the required degree of care, resolves itself into one as to whether that fault was or was not a proximate cause of the injury, and that the answer to that question will infallibly determine whether or not it will bar a recovery.

These principles and this ultimate conclusion have become firmly established in the law of this State by the course of the decisions already referred to and others. *Knowles* v. *Crampton*, 55 Conn. 336, 345, 11 Atl. 593; *Smithwick* v. *Hall & Upson Co.*, 59 Conn. 261, 269, 21 Atl. 924. They have also had the approval of numerous cases elsewhere, of which the following are typical: *Button* v. *Hudson River R. Co.*, 18 N. Y. 248; *Murphy* v. *Deane*, 101 Mass. 455; *Richmond* v. *Sacramento Valley R. Co.*, 18 Cal. 351; *Nashua Iron & Steel Co.* v. *Worcester & N. R. Co.*, 62 N. H. 159. See 16 Va. Law Reg. 162. A note, found in 55 L. R. A. 419, contains an exhaustive review of the many cases, and strongly supports this position. Thompson, in his work on Negligence (Vol. I, § 230), forcibly comments that any doctrine which brings the contributory negligence and last clear chance rules into conflict "introduces a principle of manifest injustice, and throws the whole subject into confusion."

Thus far we have had the way marked out for us by the clearly defined doctrine of former opinions. But the proposition just stated, which is thus supported, while sufficient for the determination of many cases

and furnishing a helpful guide in most others, does not resolve all the difficulties which may be encountered. It leaves the question open as to when negligent conduct in a person injured in his person or property is to be regarded as a proximate cause of the injury. How close must be the causal connection between the negligence and the injury?. It is at this point that any real uncertainty or trouble arises under the doctrine of this jurisdiction.

We are indeed furnished with general definitions of "proximate cause," as in *Smith* v. *Connecticut Ry. & Ltg. Co.*, 80 Conn. 268, 270, 67 Atl. 888, where the following language is used: "That only is a proximate cause of an event, juridically considered, which, in a natural sequence, unbroken by any new and intervening cause, produces that event, and without which that event would not have occurred. It must be an efficient act of causation separated from its effect by no other act of causation." But admirable as this definition is as an abstract statement, it leaves the door of uncertainty open when an attempt is made to make application of it to certain concrete situations.

The defendant in another pending case, involving the principle under discussion, asserts that the last clear chance doctrine is one which can have no application except to cases where the plaintiff's negligence had ceased in time for the defendant to have saved him by the exercise of due care. A considerable number of authorities are cited in support of that proposition, which is strongly advocated in a note found in 7 L. R. A. (N. S.) 132, in which the cases thus cited and others are reviewed.

We have no occasion to quarrel with these cases or their conclusion, since upon examination the proposition asserted in them does not essentially change the nature of the ultimate decisive inquiry which is re-

quired to be made under our statement of the governing rule. The negligence referred to in the claimed rule is, of course, that which the law so denominates, to wit, want of due care which is a proximate cause of harm. The proposition is not dealing with a lack of due care which the law ignores. When it speaks of the negligence ceasing, negligence in the legal sense is meant. It may in a given case cease in the sense that prudent conduct takes its place. It may for all legal purposes cease through the relegation of it, as events progress, to the domain of remote cause. In other words, it ceases when, and only when, the conditions of contributory negligence disappear. The claimed test thus solves no problems. It only brings one back, in doubtful cases, to the inquiry whether the plaintiff's conduct, lacking in due care, was of such a character, or so related to the injury, that it ought to be regarded as a proximate cause of it, as the real test which must be applied.

The impossibility of framing any general abstract statement which will suffice to resolve the difficulties which may be presented under varying conditions, or to anticipate all such conditions, is apparent. We shall undertake no such task. There are, however, certain sets of conditions, of not infrequent occurrence, concerning which general conclusions may be made safely and profitably.

There is, for instance, the occasional case where, after the plaintiff's peril, to which he has carelessly exposed himself or his property, becomes known to the defendant, the latter introduces into the situation a new and independent act of negligence without which there would have been no injury. Such was the case of *Smith* v. *Connecticut Ry. & Ltg. Co.*, 80 Conn. 268, 270, 67 Atl. 888, and it was there held, in accordance with sound reason, that this new negligence was to be

regarded as the sole proximate cause of the accident which ensued. The rule for that type of case is thus furnished.

Cases of another class occasionally arise, where it is disclosed that the plaintiff has by his lack of care placed himself in a position of danger from which he either cannot, or cannot reasonably, escape after the discovery of his danger. Here, again, there can be no hesitation in saying, that if the defendant, after his discovery that the plaintiff is in the situation described, fails to use reasonable care—and that is care proportioned to the danger—to save him from harm, and harm results from such failure, the defendant's want of care will be regarded as the sole proximate cause, and the plaintiff's a remote cause only.

The situation just stated is not infrequently changed, in that means of escape were open to the plaintiff by the exercise of reasonable care, but it was apparent to the defendant, in season to have avoided the doing of harm by the exercise of due care, that the plaintiff would not avail himself of them. Here it is assumed that the situation of exposure had been created and established by the plaintiff's action before the period of time began within which the defendant, acting reasonably, might have saved him, and that within that period the plaintiff did nothing to create or materially change that situation by active conduct which was not marked by reasonable care. Under the assumption he remains passive, in so far at least as negligent action is concerned, and can be regarded as careless only in this that he did not awake to his surroundings and do what he reasonably could to avoid the threatened consequences of a situation which he had already negligently brought about. In such cases the humane, and, to our mind, the better reason, all things considered, leads to the conclusion to which our former opinions, already

cited, commit us, and which a large number of cases elsewhere approve, that the want of care on the part of the plaintiff will be regarded as a remote and not a proximate cause.

Another important variation is oftentimes introduced into the situation, in that the plaintiff continued as an active agent in producing the conditions under which his injury was received down to the time of its occurrence, or at least until it was too late for the defendant, with knowledge of his peril, to have saved him by the exercise of reasonable care under the circumstances. This variation imports into the situation an important factor. The plaintiff, during the period named, is not merely passively permitting an already fixed condition to remain unchanged. He is an actor upon the scene. He is, by acts of his volition, bringing into the situation which confronts the defendant changed conditions and, in the fullest sense, co-operating with the latter in bringing about the ultimate result. In such case his conduct must be regarded as a concurring efficient cause. It is, in the fullest sense, a proximate and not a remote one, making his negligence contributory.

It is said, however, that there are cases, and undoubtedly there are, where it is reasonably apparent to the one who inflicts the injury that the injured one is careless of his safety, and that, in continuance of his carelessness, he is about to place himself in a position of danger, which he subsequently does, and where the former thereafter, having a reasonable opportunity to save him from harm, fails to do so; and it is contended that in such cases the conduct of the injured person should be regarded as a remote cause only of the resulting harm. ( We are unable to discover any logical reason for such a conclusion, or any place at which a practical or certain line of division can be drawn between that careless conduct of a man, playing some

part in an injury to him, which the law will regard as having that causal connection with the injury which makes it a proximate cause, and that careless conduct which will not be so regarded, if the contention under consideration is to be approved. The conduct of the man who inflicts the injury under such general conditions may indeed be such that it is open to the charge of wilfulness or wantonness. If so, the case is not one of negligence, and the defense of contributory negligence would not be available. *Rowen* v. *New York, N. H. & H. R. Co.*, 59 Conn. 364, 371, 21 Atl. 1073. If the conduct is not wilful or wanton, it is negligent only. Thus treated, it forms one factor of negligence in the situation. The plaintiff's want of care is another factor, and it certainly has something substantial to do in bringing about the result reached. Upon what theory or foundation in reason it can be said that, under the circumstances assumed, it is not an efficient cause of that result co-operating concurrently with the other cause to be found in the other party's negligence, we are unable to discover. The causal connection is plain to be seen, and the act of causation is that of a positive act of volition. The two actors upon the scene owe precisely the same duty to be reasonably careful. *Dexter* v. *McCready*, 54 Conn. 171, 174, 5 Atl. 855. Neither occupies in that regard a superior position, and the one who suffers can claim no precedence over his fellow actor or at the hands of the law. To say that no matter if one be negligent in going forward into danger, or in creating new conditions or complicating them, the law will protect him and cast upon the other party the responsibility for the result, is to ignore the fundamental principle of contributory negligence and bring the law upon that subject into hopeless confusion, and merit for it the condemnation which Thompson has so forcibly expressed. 1 Thompson on Negligence, §§ 230,

233. The well-considered cases which have directly dealt with this subject agree with us, we think, in our view that active continuing negligence of the kind assumed is to be regarded as contributory in the legal sense. *Butler* v. *Rockland, T. & C. Street Ry. Co.,* 99 Me. 149, 160, 58 Atl. 775; *Murphy* v. *Deane,* 101 Mass. 455, 465; *Dyerson* v. *Union Pacific R. Co.,* 74 Kan. 528, 87 Pac. 680; *Little* v. *Superior Rapid Transit Ry. Co.,* 88 Wis. 402, 409, 60 N. W. 705; *Green* v. *Los Angeles Terminal Ry. Co.,* 143 Cal. 31, 47, 76 Pac. 719; *Olson* v. *Northern Pacific Ry. Co.,* 84 Minn. 258, 87 N. W. 843.

We have thus far dealt with cases in which actual knowledge on the part of the defendant of the plaintiff's peril enters into the assumption of facts. Suppose, however, that such knowledge is not established, but facts are shown from which it is claimed that the defendant ought in the exercise of due care to have known of it. What shall be said of such a situation?

In so far as imputed or constructive knowledge may be embraced in the assumption, the simple answer is to be found in the legal principle that full and adequate means of knowledge, present to a person when he acts, are, under ordinary circumstances, treated as the equivalent of knowledge. *Post* v. *Clark,* 35 Conn. 339, 342.

But our assumption reaches outside of the domain of knowledge, either actual or constructive. It suggests, in the use of the phrase "ought in the exercise of due care to have known," frequently met with in the books, the existence of a duty to exercise due care to acquire knowledge, and the query is, whether the law recognizes the existence of such a duty to the extent of making it a foundation for responsibility for conduct akin to that which flows from conduct with actual or constructive knowledge.

We have frequently held that the character of one's conduct in respect to care is to be determined in view

of what he should have known as well as of what he did in fact know. *Snow* v. *Coe Brass Mfg. Co.*, 80 Conn. 63, 66 Atl. 881. In these cases the question has been as to one's duty for his own self-protection. That duty, according to established principles, involves the making of reasonable use of one's senses under the penalty of forfeiture of all claim for redress in the event that harm results. *Popke* v. *New York, N. H. & H. R. Co.*, 81 Conn. 724, 71 Atl. 1098.

But how about a duty of acquiring knowledge, owed to others for their safety, which, not being performed, will furnish a basis of liability? In *Elliott* v. *New York, N. H. & H. R. Co.*, 83 Conn. 320, 76 Atl. 298, we recognized that such a duty might exist. That case involved the conduct of a locomotive engineer operating his engine at a grade-crossing, and we approved a charge which gave to the knowledge which the engineer, under the conditions, ought, in the use of due care, to have had, the same effect as actual knowledge. The duty imposed upon him was one to be watchful in order that needless harm might not come to persons who might be using the crossing, from the dangerous instrument of his calling. The duty was one toward others, which the circumstances and conditions must be regarded as fairly creating. For a like reason a similar duty rests upon other persons and under other conditions, in greater or lesser measure. Whether it exists, and the extent of it, depends upon the circumstances of each situation. A circumstance of chief significance, perhaps, is one which concerns the character of that about which the person is engaged in respect to its being calculated, under the conditions, to work injury to others. And so it is that a locomotive engineer, a motorman of a trolley-car running in a highway, or a chauffeur driving an automobile, is under a duty to be watchful for the protection of others which

another man under other conditions would not owe to his fellows. Unreasonableness in one's conduct, as a foundation for responsibility to others, cannot justly be established upon the basis of knowledge not possessed. It can with propriety be predicated upon negligence in not having acquired more knowledge. Negligence in this respect, as in all others, implies the existence of a duty to make use of means of knowledge. This duty must be found in the circumstances, and caution must be exercised in order that it, with its consequences, be not raised where the circumstances do not fairly impose it, or be extended beyond the limits which the circumstances fairly justify.

An examination of the evidence in the present case, all of which was introduced by the plaintiff, discloses that she failed entirely to prove that her intestate was free from contributory negligence. On the contrary, it clearly shows that he did not exercise due care, and that his want of care was a proximate cause of his death. The witnesses are in entire accord in showing that, immediately prior to the moment when he was struck by the car, and down to that moment, he was walking in a diagonal course across the main street in Ansonia, and in a course which would take him across the trolley tracks laid therein; that his course was one which would, as he approached these tracks, bring him to them at a pronounced acute angle, so that his view of them in one direction would be practically obscured; that he, not having the benefit of a normal sense of hearing, did not look about him or take any of the ordinary precautions for his safety, but kept steadily on his way until he was hit in the rear, upon the right side, by the fender of the car which approached from that direction.

It thus appeared, and a jury could not have found otherwise reasonably, that the intestate down to the final moment of impact continued in his negligent

course of action, and in a most effective way helped to create the dangerous situation in which he was injured. For aught that appears, he did not step into the zone of danger until the very instant that he was hit, and he took that step by his own voluntary act. Under the principles already laid down, his negligent conduct must be regarded as a proximate cause of the harm which befell him, and he as having been guilty of contributory negligence barring recovery in the action.

There is no error.

In this opinion THAYER and RORABACK, Js., concurred.

GEORGE W. WHEELER, J. (dissenting). The trial court directed a verdict at the conclusion of plaintiff's evidence. The majority of the court have, we think, overlooked or misinterpreted some of the vital facts in the evidence, quite likely through their understanding that the plaintiff's case in reality rested upon the last clear chance doctrine, and that her claim, though pressed in argument and brief that the issue of contributory negligence was for the jury, was purely perfunctory. For this reason we state some of the facts which the jury had sufficient evidence before them to have found.

The accident occurred in the most prominent business section of Main Street in the city of Ansonia. This street was paved with cobble stones. From the east curb to the west rail of the single trolley line running through the middle of the street is nineteen feet. Nehring, the deceased, was familiar with the street and the car service thereon, and he started at a point five feet from the east curb, as Hodgdon testified, to go to his wagon on the opposite side of the street to the south. He was then fourteen feet from the track. At this time

the defendant's single truck car, equipped with a hand brake, was approaching from the north and was distant about three hundred and thirty feet. The witnesses testify as to the speed of the car, placing it from nine to twenty miles an hour. One, Willehmy, testified it was fifteen or twenty miles an hour.

The motorman kept no lookout as McKeon testified. He rang no gong and gave no warning and did not reduce the speed, as all witnesses agree. The deceased walked at an ordinary gait from the east curb south to a point on the track seventy-eight feet distant. Two witnesses say he walked in a diagonal direction across the street; one witness says he walked directly across to a point within two feet of the track when he continued in a straight line within two feet of the track. When about at the street crossing running from the northerly line of Bank Street he stepped upon the track, was struck in the back by the front end of the car, thrown under the wheels and killed. All of the time the deceased was walking he was facing the south, with his back toward the car. The day was clear, and although there were teams on the street the view of the deceased to the north and of the motorman to the south was unobstructed. The deceased could have seen the car, and the motorman the deceased. The deceased was slightly deaf but could have heard the gong had the motorman rung it.

No direct evidence was offered whether the deceased, at or before the time he started to cross the street, looked up to see if a car was approaching. The circumstances showed that the deceased did not look for the car after he got within five feet of the track.

The car was equipped with a fender which it was the duty of the motorman to have had in position from two to four inches above the surface of the track. The fender at the time of the accident was a foot above the

track. The fender could have been dropped almost instantaneously to position by the motorman by pressure of the foot. Had the fender been dropped to position before the deceased was struck, he could not have been dragged under the wheels and in all probability would not have been killed.

At a speed of fifteen miles an hour the car could have been stopped in about thirty feet.

When the deceased was within five feet of the track, if it be found he walked diagonally to the track, the car which was travelling fifteen miles an hour, nearly four times as fast as the deceased, was between seventy-five and one hundred feet from the point where deceased was struck. If it be found the deceased walked to within two feet of the track and thence south at that distance from the track, the car was distant from him at the time he got within two feet of the track about two hundred feet. On either finding the motorman, in the exercise of reasonable care, would have known in the one case that the deceased was about to put himself in danger from the car, and in the other that he had put himself in danger from the car and that he was wholly unconscious of his danger and unless warned, or the car's speed slackened or stopped, he would be struck. After the motorman discovered the peril of the deceased and his unconsciousness of it, he had the opportunity, in the exercise of reasonable care, of avoiding injuring him. So, too, after the motorman discovered the peril to the deceased and his unconsciousness of it, he had the opportunity in the exercise of reasonable care to have dropped the fender and so have avoided killing the deceased.

Two questions, contributory negligence, and "last clear chance," are involved. We discuss first the contributory negligence.

1. The deceased had a right to cross the street when

he did.   His duty and that of the railroad company
were reciprocal, each to look out for the presence of
the other, the one to avoid being injured, the other to
avoid inflicting injury.   *Laufer* v. *Bridgeport Traction
Co.*, 68 Conn. 475, 37 Atl. 379.   The motorman had
the right to assume that Nehring would not put him-
self in a place of danger.   And Nehring had the right
to assume that the car would be operated in a
reasonable manner, at a reasonable rate of speed in
the main business street of this busy city a few minutes
before the noon hour, and that the car would be under
control and the motorman keep a reasonable outlook
and give travellers on or near the track timely warning
of the car's approach.

There was no direct evidence that Nehring looked
to the north, affirmative proof of which would be diffi-
cult in any event to obtain.   There is no evidence,
direct or inferential, of the conduct of the deceased
between the time he left the bake wagon and the time
he is seen eight or ten feet south of the wagon and five
feet from the curb.   He was only fourteen feet from
the track, he was on his way across the street; it was
reasonable for him to have looked at the beginning of
his passage across, and the law presumes he did.   Self-
preservation would have suggested this.   In *Baltimore
& P. R. Co.* v. *Landrigan*, 191 U. S. 461, 474, 24 Sup.
Ct. Rep. 137, the court relied upon this presumption
to find that a traveller used his senses before going upon
a railroad crossing: "We know of no more universal
instinct than that of self preservation. . . .   There are
few presumptions, based on human feelings or ex-
perience, that have surer foundation."   *Sullivan* v.
*New York, L. E. & W. R. Co.*, 175 Pa. St. 361, 365, 34
Atl. 798; *Connerton* v. *Delaware & H. Canal Co.*, 169
Pa. St. 339, 32 Atl. 416; 16 Cyc. 1057.   This presump-
tion is of a like character with that which enables the

traveller to act on the presumption that a highway is reasonably safe for public travel. *Lutton* v. *Vernon,* 62 Conn. 1, 11, 23 Atl. 1020, 27 id. 589. Of course this presumption does not excuse the traveller from the use of reasonable care for his own safety, but that is to be measured in the light of this presumption.

If, then, the deceased saw the car over three hundred feet to the north when he began his passage across the street starting at a point fourteen feet from the track, was it negligent for him to assume that he had time to cross the track, or ought he to have waited until the car passed? Was it negligent for him not to have accurately judged the speed of the oncoming car and perhaps to have decided he had time to cross? Was it negligent for him to have assumed that in the heart of the business street of this populous city, at about the noon hour, the speed of the car would not be unreasonable? Was it negligent for him to assume that the motorman would have the car under control? Was it negligent for him to assume that the motorman would give him timely warning of its approach and reduce its speed? Was it negligent for him, at this time, in this place, under these circumstances, not to have stopped, looked and listened before going so near the track as to be in danger? These were some of the considerations for the jury.

We have reiterated that it cannot be said as matter of law a failure to do these things is negligence. *O'Connor* v. *Connecticut Ry. & Ltg. Co.,* 82 Conn. 170, 72 Atl. 934. Whether the decedent's own negligence was a proximate cause of this accident, depended on whether he exercised reasonable care under all of the many varying circumstances of the case, and that was a question of fact for the jury. *Farrell* v. *Waterbury Horse R. Co.,* 60 Conn. 239, 21 Atl. 675, 22 id. 544. It is only when the application of this standard to the facts of a case

makes it clear that no reasonable mind could reach any conclusion except that of contributory negligence, that the decision becomes one of law and for the court. Is this case so plain that no reasonable conclusion could be reached other than that of the deceased's contribu-- tory negligence, that is, that his negligence was a proximate, efficient cause of the accident? If so, the direction of the verdict was right, otherwise it was not. *Steinert* v. *Whitcomb*, 84 Conn. 262, 79 Atl. 675.

We may estimate the average judgment by the average conduct. What is the conduct of the average person upon our crowded streets? Do not persons generally rely for their safety largely upon the fact that they travel upon the streets under the protection of the law which imposes upon the operators of instrumentalities of danger, such as the trolley-car and the automobile, the duty of operation with knowledge of the liability of travellers being upon the street and the consequent necessity for careful outlook, reasonable speed, timely warning, and a car under control? The danger to a pedestrian crossing our streets has immeasurably increased with the use of these instrumentalities, and so has the fulfillment of his duty of using reasonable care. He should be held to his duty, but not in its practical application to a standard of care which is far beyond the conduct of the average man. Penalizing the injured to relieve the injuring traveller decreases the public safety and in the end must add to the public burden the care of many of the stricken.

We think the question of the decedent's contributory negligence should have been left to the jury.

2. Though Nehring was negligent in going near and upon the track without using his senses to discover the approaching car, his negligence was not a proximate cause of the accident, since the case is one for the application of the "last clear chance" doctrine. This is

merely a name for certain forms of actionable negligence. These involve a situation presenting: (1) The negligence of the defendant; (2) the concurrent negligence of the plaintiff; (3) after such negligence of the plaintiff some intervening negligence of the defendant which becomes the last act in the chain of causation.

Our consideration of this doctrine will be aided by holding in mind some fundamental principles of the law of negligence. The negligence which will support a recovery for an injury must be its proximate cause. If one's own negligence be a proximate cause of his injury, he cannot recover for the consequences of another's negligence, for the law will not suffer him to recover for the misfortune due in part to his own fault. The negligence of plaintiff and defendant may be concurrent, but that of the plaintiff may, in a legal sense, have ceased, because it has become a remote cause of the accident. It thus ceases to be a proximate cause of the accident.

Just prior to the accident the defendant's car was being negligently operated. Assuming the decedent walked either diagonally toward and upon the track, or close to it, without using his senses to learn of the approaching car, and that there was no excuse for his failure, he was negligent. If the accident occurred while decedent and defendant were negligent and the decedent's negligence was a proximate cause of the accident, and there was nothing more to the case, there could be no recovery. But if the defendant's motorman saw, or could by the exercise of reasonable care have seen, the decedent either approaching the track and about to place himself in danger, or walking so near the track as to be in danger, apparently heedless and unconscious of his peril, he owed to the deceased the duty of warning him and of observing such precautions as might avoid running into him. This was the case

before the jury. We hold knowledge and the means of knowledge of one having a duty to know equivalent. *Elliott* v. *New York, N. H. & H. R. Co.*, 83 Conn. 320, 76 Atl. 298. This duty originated after the negligence of the motorman and of the deceased, and after the latter's peril and his unconsciousness of it might have been discovered by the motorman. If its performance would have avoided the injury to the deceased, its breach was the proximate cause of the accident, and his negligence in placing himself in the place of peril a condition, or the remote cause, of it. Of course, if he had not gone upon the track he would not have been injured; if he was negligent in going upon the track without using his senses, that was not the proximate cause of the accident, but the failure of the defendant to avoid the accident after it had the opportunity of avoidance and after it knew of the decedent's peril and his unconsciousness of it.

In each case of discovered peril caused by one's negligence the question is, did the defendant have the opportunity after such discovery, and was it his duty, to have avoided the accident? Whether the conduct of the motorman was gross negligence, or ordinary negligence, the breach of duty was the same in kind, though differing in degree. If one walks upon a railway track drunk, or in a reverie, or otherwise careless; or if one stands or lies on or so near the railway track as to be in danger and unconscious of it; or if one is in a position of peril through his own negligence from which he is unable to extricate himself, the person knowing or having the means and the duty to know of his presence owes him the duty of avoiding injuring him. One who is negligently in a position of danger and unconscious of it is in no different situation than if he were incapable of extricating himself from his peril.

The few authorities which hold the antecedent negli-

gence of the deceased in getting into peril is concurrent with the defendant's negligence so as to bar a recovery, make meaningless the rule of duty compelling the defendant to use reasonable care to avoid the accident after discovery of the peril. A legal duty without a corresponding obligation is an anomaly. When we relieve the motorman of liability for failure to avoid an accident, he may operate his car at a negligent speed, without having it under control, without keeping an outlook, without giving warning of approach, and neither having nor using the ordinary instrumentalities of equipment for avoiding injury to travellers, and so long as his conduct is not gross negligence it carries with it no liability.

The opinion of the court classifies in five groups the several kinds of cases which have been thought to be within the "last clear chance" doctrine. In group one, the defendant, instead of doing his duty, does something which is a new act of negligence. In group two, the peril is one from which the plaintiff cannot, or cannot reasonably, extricate himself. Each group supports a recovery. In group three, means of escape were open to the plaintiff down to the accident, but he remained unconscious of his peril. The opinion holds that if the plaintiff remains passive after exposing himself to peril and does nothing to materially change that condition, there may be a recovery. But in group four, assuming the same facts as in group three, the court holds that if the plaintiff after exposing himself to peril, instead of permitting the fixed condition to remain unchanged continues as an active agent in producing the conditions under which the injury was received down to its occurrence, or until it was too late for the defendant to avoid the accident, there can be no recovery. In group five, the defendant knows, or ought to know, that the injured one is careless and is about to expose himself to

danger of which he is unconscious, and after such knowledge has the opportunity to avoid injury to him, and in such case the court holds there can be no recovery.

We have attempted to show that the breach of duty of the defendant in each of these several groups is the same, and was a new act of negligence of the defendant, viz: the failure of the defendant to avoid injuring the plaintiff after he knew of his peril when he was either unconscious of it or incapable of extricating himself from it, and that this breach was the proximate cause of the accident while the plaintiff's prior negligence was the remote cause.

The distinction between active and passive negligence made in groups three and four, is new to our law, as well as to the law of negligence generally prevailing in this country and in England. On analysis it does not seem logical. *A* is crossing a trolley track when hailed by a friend; he stops upon the track to talk and negligently fails to use his senses to discover an approaching car. The motorman could have seen *A* in his place of peril, unconscious of his danger, and in time, with the exercise of reasonable care, to have avoided injuring him; instead he drives on his car and kills *A*. The opinion would hold *A* negligent in being upon the track without using his senses to keep out of the way of the oncoming car, but that as he remained passive and did nothing to change his situation of peril after the motorman had the opportunity to have avoided the accident, he may recover. But if *A*, instead of stopping on the track had gone on his way across or upon the track and been struck, his negligence would have been active and continued to the accident and would have been concurrent with that of the motorman. It must be conceded that the breach of the motorman's duty would have been the same in each case: a failure to

use reasonable care to avoid the accident.   We see no
reason why it should be available in the one case and not
in the other.   In neither case has the plaintiff's negli-
gence changed.   It never became passive or nonexistent.
It remained to the time of the accident.   It ceased, in
a legal sense, to be a proximate cause of the accident.
*A* was relieved of its consequences because the negli-
gence of the motorman in failing to avoid the accident
intervened and became its proximate cause.   If this
distinction holds, and *A* be upon a trolley track intoxi-
cated and asleep, his negligence is passive; if awake
and walking his negligence is active.

  That the general language of the opinion was intended
to mean this is manifest by reference to *Nichols* v.
*Connecticut Co.*, 85 Conn. 710, 83 Atl. 1022, decided
at the same time as this case.   In that case the plaintiff
left the sidewalk and walked a few feet directly upon a
trolley track where she stood a moment, unconscious
of her peril from an approaching car, which ran into
her because of the failure of the motorman to avoid the
accident after the peril of the plaintiff and her uncon-
sciousness to her danger could have been known.   The
court held the case presented an example of passive
negligence and within group three.   If the jury found
that Nehring was walking within two feet of the track
when the car was about two hundred feet distant and
so continued to about the point of the accident, as
Willehmy testified, the only condition taking the case
out of the passive group that we observe is the fact
that Nehring was in motion.   If the jury found Nehring
walked diagonally to the track, they might have found
that the motorman could have known he was about
to cross the track and was unconscious of the approach-
ing car in time to have avoided the accident.   If they
so found, the opinion presumably places the case in
group five, and holds the negligence of Nehring and of

the motorman concurrent, and hence the negligence of Nehring was contributory.

Our law on this subject was definite; it resolved actions of negligence based upon discovered peril to a determination of the proximate cause of the injury. It made no distinction between active and passive negligence, such as the opinion makes in groups three and four. In *Elliott* v. *New York, N. H. & H. R. Co.*, 84 Conn. 444, 447, 80 Atl. 283, we thus stated the rule: "If the defendant's servants, after they knew or ought to have known of Tetro's peril upon the crossing, neglected some duty which they owed him and the performance of which would have avoided his injury, such negligence would be the proximate cause of the injury, and his own negligence in driving upon the track would be only a remote, and not a proximate, cause thereof, and would not prevent the plaintiff's recovery." In *Smith* v. *Connecticut Ry. & Ltg. Co.*, 80 Conn. 268, 270, 67 Atl. 888, we said: "If, after an act of omission constituting negligence on the part of one injured at a railroad crossing, the railroad car or cars might have been so controlled, by the exercise of reasonable care and prudence on the part of those in charge of them, as to avoid the injury, then a failure to exercise such care and prudence would be an intervening cause, and so the plaintiff's negligence no longer a proximate cause, and therefore not a bar to his recovery." *Carroll* v. *Connecticut Co.*, 82 Conn. 513, 74 Atl. 897; *Elliott* v. *New York, N. H. & H. R. Co.*, 83 Conn. 320, 76 Atl. 298; *Isbell* v. *New York & N. H. R. Co.*, 27 Conn. 393.

In *Southern Ry. Co.* v. *Bailey*, 110 Va. 833, 837, 845, 67 S. E. 365, the court, in the course of an admirable statement and analysis of this doctrine, say: "The general rule adverted to is subject, however, to the qualification that where the negligence of the defendant is the proximate cause of the injury, and that of the

plaintiff only the remote cause, the plaintiff may recover, notwithstanding his negligence. . . . From that principle arises the well-established exception to the general rule that if, after the defendant knew, or, in the exercise of ordinary care, ought to have known, of the negligence of the plaintiff, it could have avoided the accident, but failed to do so, the plaintiff can recover. In such case the subsequent negligence of the defendant in failing to exercise ordinary care to avoid injuring the plaintiff becomes the immediate or proximate and efficient cause of the accident, which intervenes between the accident and the more remote negligence of the plaintiff. . . . If it be the duty of a person upon the track of a railway to keep a constant lookout for approaching trains (and of this there can be no question), and if it be the duty of the servants of the company in control of the train to exercise reasonable care to discover the presence of a person upon the track, and if in the exercise of such reasonable care the presence of such person would be discovered, and the person on the track is injured and there be no other fact proved, then it is apparent that the case stated would be one of mutual and concurring negligence, and there can be no recovery. The duty was equal and each is equally guilty of its breach. If, however, it appears that those in control of a train, in the discharge of their admitted duty to keep a reasonable outlook, discover, or should have discovered, a person upon the track, and there be superadded any fact or circumstance brought home to their knowledge, sufficient to put a reasonable man upon his guard, that the person upon the track pays no heed to his danger and will take no step to secure his own safety, then the situation changes and the negligence of the person injured becomes the remote cause or mere condition of the accident, and the negligence of the railroad

company the proximate cause, and there may be a recovery."

We relied in *Smith* v. *Connecticut Ry. & Ltg. Co.*, 80 Conn. 268, 67 Atl. 888, on *Grand Trunk Ry. Co.* v. *Ives*, 144 U. S. 408, 12 Sup. Ct. Rep. 679, and on *Parkinson* v. *Concord Street Railway*, 71 N. H. 28, 51 Atl. 268, and these cases are generally cited in support of the doctrine we contend for. *Little Rock Ry. & Electric Co.* v. *Billings*, 98 C. C. A. 467, 469, 173 Fed. Rep. 903; *Wilson* v. *Illinois Cent. R. Co.*, 150 Iowa, 33, 34, 129 N. W. 340; *Buttelli* v. *Jersey City, H. & R. E. Ry. Co.*, 59 N. J. L. 302, 36 Atl. 700; *Inland & S. C. Co.* v. *Tolson*, 139 U. S. 551, 558, 11 Sup. Ct. Rep. 653; *Washington & G. R. Co.* v. *Harmon*, 147 U. S. 571, 582, 13 Sup. Ct. Rep. 557; *Chunn* v. *City & Suburban Railway*, 207 U. S. 302, 309, 28 Sup. Ct. Rep. 63; *Stearns* v. *Boston & M. Railroad*, 75 N. H. 40, 46, 71 Atl. 21; *Little* v. *Boston & M. Railroad*, 72 N. H. 61, 62, 502, 503, 55 Atl. 190, 57 id. 920; *Quirk* v. *Rapid Railway*, 130 Mich. 654, 656, 90 N. W. 673; *Baltimore Traction Co.* v. *Wallace*, 77 Md. 435, 441, 26 Atl. 518; *Birmingham Railway, L. & P. Co.* v. *Brantley*, 141 Ala. 614, 619, 37 So. 698; *Schoonover* v. *Baltimore & O. R. Co.*, 69 W. Va. 560, 73 S. E. 266, 270; *Glazebrook* v. *West End Street Railway*, 160 Mass. 239, 240, 35 N. E. 553.

The opinion presumably places this case in group five. This conclusion assumes that the motorman owed a duty to the deceased after he put himself in peril. It fails to distinguish between the original failure of duty of outlook, etc., of the motorman, and his failure of duty to avoid the accident, knowing the peril of Nehring and his unconsciousness of it. That breach of duty intervened after Nehring's negligence in putting himself in peril, and was the last act of negligence preceding the accident, and its proximate cause. The authorities, as a rule, place the cases of peril about to

be imminent with those that are imminent, making the issue to depend upon the knowledge of the injuring party that the person subsequently injured is about to put himself in peril from which he can be saved by the reasonable care of the injuring party.

In *Smith* v. *Connecticut Co.*, 80 Conn. 268, 270, 67 Atl. 888, we decided that it was the duty of the motorman seeing one about to cross the track, to avoid the accident if he reasonably could, and our conclusion was adverse to that expressed regarding group five. We said: "At a moment when it was apparent that the intestate was about to cross the tracks, and when the car could have readily been stopped, it was allowed by an unskilful act of the motorman to shoot ahead with accelerated velocity. This act was the proximate cause of the intestate's death. The negligence of the latter was not." In *Carrahar* v. *Boston & N. Street Ry. Co.*, 198 Mass. 549, 552, 554, 85 N. E. 162, a case we rely on in *Carroll* v. *Connecticut Co.*, 82 Conn. 513, 74 Atl. 897, the court said: "When the motorman of a car sees a team ahead which is being driven in a straight line 'coming in towards' the tracks so that if both keep on a collision will ensue, it is the duty of the motorman to stop his car if he sees that the driver of the team is going on, even if the driver ought not to go on. . . . It might well be that the plaintiff, if he had exercised due care, would have heard the defendant's gong before he did hear it and would not have gone on the track at all, or, if he had got on to it, that he would have driven off it in time to avoid a collision." The jury in this case might have found this precise situation.

In *Wilson* v. *Illinois Cent. R. Co.*, 150 Iowa, 33, 129 N. W. 340, the defendant's engineer saw the team driven by the deceased approaching a public crossing in time to have averted the accident, had he used ordinary care in attempting to do so. *Yeaton* v. *Boston & M.*

*Railroad,* 73 N. H. 285, 286, 61 Atl. 522; *Little* v. *Boston & M. Railroad,* 72 N. H. 61, 62, 55 Atl. 190, 57 id. 920, and *Gahagan* v. *Boston & M. Railroad,* 70 N. H. 441, 450, 50 Atl. 146, are cases where the defendant had the means of knowing the injured person was about to put himself in peril and the opportunity of avoiding injuring him. They permit a recovery and treat imminence of danger in the same way as actual peril.

In our judgment the case was one for the jury' and the verdict ought not to have been directed.

A verdict ought not to be directed unless the evidence is such that but one conclusion can fairly and reasonably be drawn therefrom. *Robbins* v. *Hartford City Gas Light Co.,* 82 Conn. 394, 74 Atl. 113. In my opinion there was error and a new trial should be ordered.

In this opinion RALPH WHEELER, J., concurred.