WALTER J. HANFORD ET AL. (BABYLAND AMUSE-
MENT COMPANY) *vs.* THE CONNECTICUT FAIR AS-
SOCIATION, INC.

Third Judicial District, Bridgeport, April Term, 1918.
PRENTICE, C. J., RORABACK, WHEELER, BEACH and SHUMWAY, JS.

Where all the facts bearing thereon are undisputed, the question whether
a given act or contract is contrary to public policy or not, is one of
law.

A fair association having agreed to give a baby show upon its grounds
under the direction and management of the plaintiffs, is excused
from the fulfilment of its contract by the outbreak of an epidemic
of infantile paralysis which admittedly made the holding of such an
exhibition highly dangerous to the public health of the commu-
nity; for the holding of the proposed show under such circum-
stances would, as matter of law, be contrary to public policy,
and therefore the abandonment of the enterprise upon such a
contingency must be treated as an implied qualification of, or
exception to, the absolute undertaking of the association.

Argued April 12th—decided May 28th, 1918.

ACTION to recover damages for a breach of contract,
brought to the Court of Common Pleas in Fairfield
County where a demurrer to the third defense was
overruled (*Scott, J.*) and the cause was afterward tried
to the court, *Booth, J.;* facts found and judgment
rendered for the defendant, and appeal by the plaintiffs.
*No error.*

*William W. Bent*, for the appellants (plaintiffs).

*Warren B. Johnson* and *Harry W. Reynolds*, for the
appellee (defendant).

SHUMWAY, J. This is a civil action wherein the plain-
tiffs count upon a written contract and claim damages
for its breach. The complaint alleges that the plain-

tiffs agreed to promote and manage a baby show at Charter Oak Park, in Hartford, on September 6th, 7th and 8th, 1916. The contract annexed to the complaint discloses that the plaintiffs agreed to supply one hundred and twenty prizes, certain printed matter for advertising the show, and to do certain other things not material to the present inquiry. The defendant agreed to furnish a room in which to hold the show and to pay the plaintiffs $600.

The defendant in its answer alleged that during the middle and latter part of August and early in September, 1916, a disease popularly known as infantile paralysis was epidemic in the city of Hartford, and throughout the State of Connecticut, which disease attacked children, and particularly babies and young children, in large number. Said disease proved fatal in a large proportion of the cases, and permanently crippled many of those afflicted with it; and for some time prior to, and at the time of the proposed baby show referred to in said alleged contract, was so widespread and so serious as to make assemblies of children, and especially young children, highly dangerous to the health of the children of the community; and by reason of said facts it was contrary to public policy to hold a baby show of the nature and at the time provided for in said alleged contract. The answer further alleged that the defendant notified the plaintiffs about the middle of August that it wished to cancel the contract for the reason above set forth, and thereafter the contract was definitely and finally cancelled for the reason named.

To this answer the plaintiffs demurred. The court overruled the demurrer, and this ruling furnishes the only reason of appeal.

It appears that the contract was a joint undertaking by the plaintiffs and defendant. Each of them was to

furnish and do such things as were deemed essential to attract a number of babies to the grounds and buildings controlled by the Fair Association. Presumably the babies were in some manner to be exhibited, and it was expected that at least one hundred and twenty prizes would be awarded for such excellent and desirable traits as the babies might be adjudged to possess upon an inspection and comparison. Such an assembly of children it is alleged would be "highly dangerous" to the health of the community, and against public policy. For the present purpose it must be assumed that it would be dangerous to the public health. However, it seems that whenever all the facts bearing upon the question of public policy in any given case are undisputed, whether or not the acts or contracts are contrary to public policy, is a question of law. *Connors* v. *Connolly*, 86 Conn. 641, 86 Atl. 600. Then the allegation in the answer, that the performance of this contract was contrary to public policy, must be treated as a statement of a legal conclusion, and not a fact which is admitted by the demurrer. In the case of *Connors* v. *Connolly, supra*, the court quotes with approval this passage from Greenwood on Public Policy, page 5: "The question of the validity of the contract does not depend upon the circumstance whether it can be shown that the public has, in fact, suffered any detriment, but whether the contract is, in its nature, such as might have been injurious to the public. . . . The law looks to the general tendency of such contracts."

It is conceded that if a contract is contrary to public policy it is void. As it is admitted that the holding of a baby show under the circumstances narrated would be highly dangerous to the health of the community, it must follow that such a show would be contrary to public policy. This court is now considering the suf-

ficiency of an allegation, not how that allegation can be proved. The allegation that the baby show would be dangerous to public health might be avoided by the plaintiff by alleging, if such is the fact, that effectual precautions had been taken to prevent the communication of the disease from one child to another, or by setting up any other fact making it clear that no harm could result to the public from the show. But the court cannot regard the averment that the assemblage of a number of children as proposed would be "highly" dangerous to the public health, other than as a fact which the plaintiff must answer, either by denial or matter in avoidance.

The court will not require the performance, or award damages for a breach, of a contract in which the public have so great an interest as the preservation of health, if the health is in fact endangered, any more than it would require one to be performed the tendency of which was immoral or one which interfered with the right of everyone to earn a livelihood by a lawful occupation. *Connors* v. *Connolly*, 86 Conn. 641, 86 Atl. 600. The plaintiffs in their brief rely upon these cases: *Libby* v. *Inhabitants of Douglas*, 175 Mass. 128, 55 N. E. 808; *Dewey* v. *Alpena School District*, 43 Mich. 480, 5 N. W. 646; and *Gear* v. *Gray*, 10 Ind. App. 428, 37 N. E. 1059. These appear to be actions brought by school teachers to recover salary when the schools had been closed by reason of the prevalence of some contagious or infectious disease in the community. There is a difference between a contract to teach school, and one to promote and manage a baby show. Teaching proper subjects can never be unlawful or contrary to public policy, though the assemblage of a number of children in one room might become very harmful. The teacher has usually no control over the attendance in his school. The baby show, however, would be

highly dangerous to health, and this is just what the parties have agreed to promote and carry out for their mutual profit.

The plaintiffs contend that the defendant's undertaking was absolute and unqualified, and they cite in their brief the case of *School District No. 1* v. *Dauchy*, 25 Conn. 530. The trial court appears to have had this case in mind in overruling the demurrer, and applied the principle there enunciated. Even though in this case the promise was absolute and unqualified, yet neither party contemplated that the show would be held if the public health would be endangered thereby, and therefore the contract impliedly contains a provision to that effect. The trial court so held.

There is no error.

In this opinion RORABACK and WHEELER, Js., concurred.

BEACH, J. (dissenting). I dissent from the broad proposition that whenever an otherwise lawful act becomes dangerous to the public health, it automatically becomes contrary to public policy and therefore unlawful, without any statute or order intervening to make it so.

Confining the statement to things which are inherently lawful,—such as a baby show—but which may become dangerous to public health because of an external temporary condition, the public policy of Connecticut as regards the taking of prophylactic measures, appears to me to be manifested by the establishment of a complete system of State, county and municipal health officials armed with all necessary powers. It is our public policy, I think, that a determination of the preliminary question whether the public health is endangered, should be left to the responsible medical

experts appointed for that purpose, and not to the *judicium rusticum* of a jury; also that these official experts should determine in advance what, if any, preventive measures ought to be taken, instead of leaving that question to be determined, after the event, by a jury.

For these reasons I think the demurrer to the answer ought to have been sustained, on the ground that it did not appear that the holding of this baby show had been prohibited by an order of the county or State health officials.

In this opinion PRENTICE, C. J., concurred.