KATHERINE FRASER TULLOCK, ADMINISTRATRIX, ET AL. *vs.* THE CONNECTICUT COMPANY.

LENA G. BROWN, ADMINISTRATRIX, ET AL. *vs.* THE CONNECTICUT COMPANY

Third Judicial District, Bridgeport, October Term, 1919.
PRENTICE, C. J., WHEELER, BEACH, GAGER and CASE, Js.

Automobile travelers upon the highway who voluntarily and unnecessarily select a spot in dangerous proximity to a street-railway track, in which to change tires, are guilty of negligence; and if, while so engaged, they are struck and killed by a passing trolleycar, no recovery can be had of the street-railway company unless it be through the application of some phase of the doctrine of the last clear chance.

Where this doctrine is applicable, it makes no difference as to the liability of the injuring party—in this case the trolley company—whether it had actual knowledge of the peril of the injured persons, or in the exercise of ordinary care should have acquired such knowledge.

Tullock *v.* Connecticut Co.

The evidence in the present case examined and *held* to have furnished a reasonable foundation for the finding of the jury that the defendant's motorman ought, in the exercise of due care, to have become aware of the peril of the decedents and that emergency-action upon his part was essential to secure their safety.

The notion that where there has been concurring negligence there can be no recovery, although still followed by many courts, is too rigid and unyielding a rule to work justice under, all circumstances. That result is better attained, in the somewhat infrequent situations which call for its application, by the last-clear-chance rule, which alleviates to some extent the burden of suffering cast by the stricter rule upon those injured mainly, though not entirely, through the fault of others, and is thus more in accord with just and humane considerations.

Argued October 29th—decided December 22d, 1919.

ACTIONS to recover damages for personal injuries resulting in the death of the injured person in each case and alleged to have been caused by the defendant's negligence, brought to the Superior Court in New Haven County and tried together to the jury before *Haines, J.;* verdict and judgment in each case for the plaintiff employers of the decedents, who had been compelled to make compensation to their respective dependents, and appeal by the defendant. *No error.*

The defendant owned and operated a double track trolley-line between New Haven and Derby. The place of accident was in the outlying country district a little more than half-way from the former to the latter city. At this point the rails are laid outside of the highway limits, except that the northerly of the four is in places slightly inside of those limits. The traveled portion of the highway is paved with concrete to the width of eighteen feet. Between this concrete traveled way and the most northerly of the tracks is, at the point of accident, a space of some three feet in width which was neither prepared for travel nor ordinarily traveled. A little east of this point the trolley-tracks diverge from the traveled way, soon leaving

a considerable distance between the two. Both the traveled way and the tracks were, for a considerable distance in the direction of New Haven, practically straight with no obstruction to the view either way.

On the evening of November 23d, 1917, the plaintiffs' intestates, Tullock and Brown, accompanied by another person named Frisco, all in the employ of the plaintiffs Miner, Read & Tullock, left Derby to return to New Haven in an automobile truck. As they approached the point of accident the right-hand rear tire blew out. They thereupon drew the truck up close to the right-hand or southerly edge of the concrete, and stopped there to change the tire. Had they proceeded but a little further there would have been ample room for them to make the change without bringing themselves into dangerous proximity to a trolley-car, should one pass. The head-lights on the truck had been previously lighted, as Frisco testified, and so remained until the time of the accident save as hereinafter stated. There were three of these lights. One in the middle was a powerful acetylene lamp with mirror reflector; the other two were kerosene lamps with glass faces some six or seven inches in diameter, and giving out, as was testified, a bright light. These two were located on either side of the windshield.

Tullock and Brown did the manual work of changing the tire. They had almost finished their task, and were putting on or tightening up the last few nuts when the accident happened. In doing this work they occupied the space between the concrete and the tracks, and were kneeling or crouching down therein. Frisco meanwhile assisted them by taking one of the kerosene lamps off from the truck and holding it so that it would furnish light for the better prosecution of the work of his companions. As he held it he stood, as he, the only witness on the subject, testified, between the two rails

of the Derby-bound track and a little to the west of the wheel upon which the work was being done, and with the lamp held about four feet from the ground with its open face toward New Haven. In this situation all three of the men were struck by a Derby-bound car, of whose approach they were unaware.

The trolley-car which hit them was proceeding at a speed estimated by the motorman at about fifteen miles an hour. The night was described by him as very dark. The car was lighted in front by two ordinary incandescent bulb lights, which, under ordinary circumstances, threw a light ahead only about fifteen or twenty feet. A part of the ordinary equipment of the car was a high powered light, and ordinarily such lights are used while running in the outlying portions of the route. There was such a lamp upon the car when it was taken from the barn, but the motorman, having discovered that it was not in working order, removed it. He testified that he could have stopped the car at the speed at which he was going in about one hundred feet. He also testified that he did not observe either of the men until he was within fifteen or twenty feet of them.

*Harrison Hewitt* and *Harrison T. Sheldon,* for the appellant (defendant).

*Walter J. Walsh,* for the appellees (plaintiffs).

PRENTICE, C. J. All the reasons of appeal have been abandoned by not being pursued, save only that which charges error in the denial of the defendant's motions to set aside the verdicts and grant new trials.

The evidence, in whatever light it be viewed, unmistakably discloses that the plaintiffs' intestates were guilty of negligence in their choice of a place in which to perform the work in which they were engaged

at the time they were injured, and in the manner in which they were performing it. A contrary conclusion could not reasonably have been arrived at by the jury. They could not, therefore, properly have returned the plaintiffs' verdicts which they did return, unless it was through the application of some phase of the doctrine of the last clear chance to the situation as it was found to have existed. It is apparent that the only phase or phases of that doctrine, within which the circumstances of the case could by possibility bring it, are those which were under consideration in connection with the second and third of the classes of cases defined and discussed in *Nehring* v. *Connecticut Co.*, 86 Conn. 109 (84 Atl. 301, 524) at pp. 120, 123 *et seq.* These two classes comprehend those where the injured person has negligently come into a position of peril, from which, as is apparent to the injuring person, he either cannot, in the exercise of due care, or will not, avail himself of means of escape in season to save himself from harm, and where, furthermore, he thereafter does not by his active negligent conduct materially change the situation. Of such conditions we said, that if the injuring person becomes aware of the other's peril in season for him, in the exercise of reasonable care, to save him from harm, it is the former's duty to do so, and that a failure on his part to perform that duty is an act of negligence which, by reason of his superior position and greater opportunity and its peculiar relation to the resulting injuries, entitled it to be regarded as their sole proximate cause, the other person's negligence in coming into the position of peril and in remaining oblivious of its continuing existence, being relegated to the position of a remote, and, therefore, not a concurring proximate cause.

So far the *Nehring* opinion had confined its discussion to cases where the injuring person seasonably be-

came aware in fact of the other's peril. Later on it took up for consideration those cases where such actual knowledge of the injured one's peril is not established, but facts are shown establishing that he ought, in the exercise of due care, to have known it. With respect to such situations we held that those things which one, in the exercise of due care, ought to have known, furnished the foundation for responsibility for conduct thereafter in the same manner and to the same extent as did actual knowledge, and that the rule in each class of cases was in effect the same, to wit: that if the injuring person either actually becomes aware or, in the exercise of due care, ought to have become aware of the danger to which another has negligently exposed himself, from agencies or conditions within the former's control, and thereafter fails to exercise that control as he might and as reasonable care under the circumstances would dictate that he should, his negligent failure in that respect will be regarded as the sole proximate cause of any resulting injury not further contributed to by the subsequent actively negligent conduct of the other person, and not merely as negligent conduct on the former's part co-operating and concurring with the latter's negligence in creating or heedlessly continuing his exposure as proximate causes of the injury which results.

This principle was restated in the subsequent case of *Hygienic Ice Co.* v. *Connecticut Co.*, 90 Conn. 21, 23, 96 Atl. 152, and again in *Fine* v. *Connecticut Co.*, 92 Conn. 626, 631, 103 Atl. 901, where a succinct statement was attempted to be given of the four conditions which we held must co-exist to enable the plaintiff to avail himself of the last clear chance doctrine under circumstances similar to those we have now under consideration. Those conditions, it was there said, were: "(1) that the injured party has already come into a

position of peril; (2) that the injuring party then or thereafter becomes, or in the exercise of ordinary prudence ought to have become, aware not only of that fact but also that the party in peril either reasonably cannot escape from it or apparently will not avail himself of opportunities open to him for doing so; (3) that the injuring party subsequently has the opportunity by the exercise of reasonable care to save the other from harm; and (4) that he fails to exercise such care."

The word "subsequently," as used in the third condition, obviously means subsequent to the acquisition of the knowledge referred to in condition two, or to the time when that knowledge ought, in the exercise of due care, to have been obtained.

This review has been called out by criticisms made by defendant's counsel, directed at the inclusion, within the terms of the statement of conditions above recited, of cases where the injuring person does not become aware in fact of the other's peril in time to save the latter by the exercise of reasonable care commensurate with the circumstances, but ought to have become aware of it had he acted as a reasonably prudent man should; and especially where also, as here, the negligence of the injured party in remaining oblivious to his exposure continued to the end. The chief criticism appears to be that by such inclusion the injuring person might be held liable, although his fault consisted only of negligent inattention, and therefore partook of the same quality as that of the injured person.

There is no doubt that counsel can find support for their contention in the utterances of courts which have clung more tenaciously than have we to the notion, which has had much vogue in many quarters, that where there has been concurring negligence, whatever

the relation each party bore to the other and the neg-
ligence of each to the result as its contributing cause,
there can be no recovery. We have recognized that
inherent injustice might well result from a strict ap-
plication to all cases of such an unyielding doctrine
without observing distinctions based upon the quality
of the several acts of causation arising from the supe-
rior position occupied by the actor, his greater oppor-
tunity, and the more intimate relationship of his negli-
gence to the event; and have intentionally adopted a
rule alleviating somewhat the burden of suffering cast
by the stricter rule upon persons injured, under certain
circumstances, through the fault of others than them-
selves, in part, and one more in accord with just and
humane considerations. This rule calls for the exercise
at one's peril of reasonable care in respect to both ob-
servation and action for the safety in positions of danger
of others who, during the vitally important period in
which emergency-action might reasonably be expected,
and would be effectual, do not themselves make a further
contribution of negligent action by materially changing
the situation already created. *Nehring* v. *Connecticut
Co.*, 86 Conn. 109, 121, 84 Atl. 301, 524.

This rule distinctly recognizes that within the field
of application of the last clear chance doctrine, there
well may be cases where negligence of inattention and
obliviousness of surroundings on the part of the person
injured continued even to the end. Thus, for example,
the specific rules laid down in *Fine* v. *Connecticut Co.*,
92 Conn. 622, 103 Atl. 901, distinctly comprehend cases
where a person who has come into a position of peril,
fails to become aware of that fact as in the exercise of
ordinary care he should, and, therefore, fails to take
steps to escape from it. *Nehring* v. *Connecticut Co.*,
86 Conn. 109, 120, 84 Atl. 301, 524. In all such and
similar cases, the rules neither ignore the presence of

that negligence, nor disregard it as having been in some measure productive of the resulting injuries. They simply say that under certain circumstances, to wit, those stated therein, negligence deserves to be relegated to the field of remote cause and therefore not to be regarded in the proper legal sense as a proximate one. *Nehring* v. *Connecticut Co.*, 86 Conn. 109, 116, 84 Atl. 301, 524.

Defendant's counsel further urge in support of their appeal, that the rule of the *Nehring* and subsequent cases, if it is to stand, should be limited to conditions where the duty to know is clear and obvious, or, as otherwise stated, where the opportunity to see and know is so clear that the person must have known had he used his senses. We fail to appreciate the basis of the distinction thus attempted to be made between the degrees of proof required, or rather in the practicability of its application to given cases. The jury must, of course, find that the means of knowledge were so open to the injuring person that he ought in the exercise of ordinary care to have known, before he can be held accountable for non-action. We are unable to discover what more can reasonably be required, or what sound reason there is for requiring more.

Coming, now, to the application of the rules hereinbefore recited, to the evidence certified to this court, we find that there is none from which it could reasonably have been found that the defendant's motorman either saw the plaintiffs' intestates, or became aware of their or their companion's presence in a situation of danger, until an instant of time before they were struck and when it was too late to avoid injuring them. If, therefore, the court's denial of the motions to set aside the plaintiffs' verdicts rendered was justified, it must have been that the evidence failed to furnish reasonable foundation for a finding by the jury that the de-

fendant's representative, operating its car, ought, in the exercise of due care, to have become aware that emergency-action on his part was necessary if the safety of persons endangered by his proceeding on his way was to be secured, in season for him to have saved them by the exercise of reasonable care commensurate with the circumstances. Examining the evidence we find ourselves unable to say that there was such failure in the evidence before the jury.

There is no error.

In this opinion the other judges concurred.