ANNIE BUJNAK, ADMINISTRATRIX, *vs.* THE CONNECTICUT COMPANY

Third Judicial District, New Haven, January Term, 1920.
PRENTICE, C. J., WHEELER, BEACH, GAGER and CASE, Js.

One guilty of contributory negligence can recover, if at all, only upon the doctrine of the last clear chance, and therefore assumes the burden of proving the existence of the conditions upon which alone that doctrine can be invoked.

In the present case the plaintiff's intestate, while driving a dump-cart, was struck and killed by the defendant's trolley-car. The decedent was obviously negligent in placing himself in the path of the oncoming car, but the plaintiff claimed a recovery upon the so-called doctrine of the last clear chance. *Held* that under these circum-

stances the burden rested upon the plaintiff to show, among other conditions, that at the time her intestate drove upon the track and thus exposed himself to a present actual peril, the motorman had time, in the exercise of reasonable effort upon his part, to stop his car and avoid the threatened collision; and that for lack of any evidence which would justify the jury in reaching such a conclusion, the trial court properly set aside a verdict for the plaintiff.

The inquiry involved in the application of this doctrine of the last clear chance begins only when the injured person has come into a position of actual, present peril; it is not concerned with earlier situations or happenings. This distinction is an important one and should be constantly borne in mind, for otherwise the place occupied by contributory negligence in our law is lost sight of.

Argued January 20th—decided March 5th, 1920.

ACTION to recover damages for personal injuries resulting in the death of the plaintiff's intestate and alleged to have been caused by the defendant's negligence, brought to the Superior Court in Fairfield County and tried to the jury before *Maltbie, J.;* verdict for the plaintiff for $2,500, which the trial court, upon motion of the defendant, set aside as against the evidence, and from this ruling the plaintiff appealed. *No error.*

Barnum Avenue is a public highway, forty-three feet wide between curbs, extending from Bridgeport easterly to Stratford. The defendant's double track trolley-line is in the middle of the street, the westbound tracks being the northerly ones. Just previous to the accident in which the plaintiff's intestate lost his life, he was driving a two-horse dump-cart along the southerly or his right-hand side of the tracks and going easterly. Dorus Street leads off from Barnum Avenue toward the north. The decedent was intending to turn into Dorus Street, and was in the act of doing so when his team was struck by a westbound car, with the result that he was thrown from his seat on the cart and received fatal injuries. The other pertinent facts are sufficiently stated in the opinion.

*Frank L. Wilder,* for the appellant (plaintiff).

*Seth W. Baldwin,* for the appellee (defendant).

PRENTICE, C. J.   The plaintiff's verdict, set aside, imports that the jury must have found either that the plaintiff's intestate was free from negligence in the premises, or that by the operation of the so-called last clear-chance doctrine his negligence is entitled to be regarded as a remote cause only of his injuries.   The evidence removes the first of these alternative conclusions from the realm of reasonable possibility.   We do not understand that counsel for the plaintiff claims otherwise.   His sole reliance in support of the verdict appears to be that the evidence furnishes a reasonable basis for a conclusion that the conditions we have heretofore laid down as justifying the relegation of an injured person's negligence from the position of a proximate cause to that of remote cause, are satisfied. Such, at least, it must be.   The burden of establishing the existence of these conditions is upon the plaintiff, since  failure to do so leaves her in the position  of one who, having been guilty of contributory negligence, seeks to recover.

If the conditions referred to were satisfied, it must be for the reason that after the deceased, in his progress along Barnum Avenue and across that avenue to turn into Dorus Street, had reached a position in which or by reason of which he or his team would be hit by the approaching car unless he was able to escape into one of safety, the defendant's motorman became aware or ought to have become aware of the peril to which he was exposed, and that he could not in the exercise of reasonable efforts escape therefrom or would not make such efforts, and thereafter the motorman had the time and opportunity, with the exercise of reasonable effort on

his part, to have stopped his car in season to prevent the threatened collision. *Tullock* v. *Connecticut Co.*, 94 Conn. 201, 108 Atl. 556.

As the decedent approached the point of accident, he was proceeding easterly along the south or his right-hand side of Barnum Avenue at a safe distance, but not over ten feet, from cars passing on the westbound tracks. If, as Dorus Street was approached, he, in order to enter it, turned suddenly and sharply to the left to cross the defendant's tracks and almost instantly and without warning was upon the westbound tracks with his team immediately in front of the car, as the defendant sought to prove, it is self-evident that the conditions above enumerated could not have arisen. Evidence, however, was produced on behalf of the plaintiff, which the jury might well have believed, to the effect that the decedent did not so turn, but that, on the contrary, as he neared Dorus Street, he gradually swung in toward the westbound tracks and made a long gradual turn to cross them.

If this was what the jury found was done, we should then have a situation in which, during some part of the swing-in toward the westbound tracks, the plaintiff's intestate had not yet reached a position of present peril, but was apparently heading for one. If the swing-in was sufficiently obvious and indicative of a purpose on the part of the decedent to cross the tracks in front of the on-coming car, the motorman might well be charged with notice of that purpose and with the duty to act for the decedent's protection. If so, and he failed in acting in accordance with the dictates of common prudence in not checking or stopping his car, as the jury might have found that he did, then he was, of course, negligent. But that particular negligence, while proximately contributing to the outcome, was not the sole proximate cause of it. It was negligent con-

duct, but in the production of the situation of present danger which was in the process of development, was negligence of the defendant concurring with that of the decedent in continuing in his attempt to cross the tracks in front of an on-coming car. During the development stage the motorman and decedent were each chargeable with contributing, materially and efficiently, to produce the dangerous situation that eventually developed through their co-operating misconduct, and it was equally within the power of each down to a certain point of time to prevent the creation of a situation of actual exposure. That point arrived when the decedent's danger ceased to be a merely threatening or imminent one and became one of actual exposure to a present hazard, from which safety was to be found only in measures of escape therefrom. It cannot fairly be said that before that moment of time had arrived, the negligence of the defendant's servant in not stopping his car was any more responsible for the resulting disaster than the decedent's in heedlessly placing himself in the car's path, or that the defendant's motorman occupied a superior position in that he had at command better facilities or opportunities to secure the decedent's safety than did the latter himself. *Tullock* v. *Connecticut Co.*, 94 Conn. 201, 108 Atl. 556.

The time came when, the development stage having passed, the decedent, owing to his want of care in part at least, stood in actual present peril, that is to say, where, if he did nothing by way of resort to preventive measures, the on-coming car, if not stopped, would hit his team—where, in other words, it was no longer a question of getting into trouble but one of escape from a trouble he was already in. If the car could not then have been stopped or reasonably could not, the deceased, like every other person guilty of contributory negligence effectively and proximately contributing to

his receipt of injuries, must suffer the consequence of his concurring negligence as a proximate cause of the fate which was his. It is from that moment that the inquiry involved in the application of the so-called last clear-chance doctrine begins. It is not concerned with earlier happenings or conditions, but only those then existing or subsequently arising, and it is upon them, and them alone, that the determination of the question involved is dependent. *Tullock* v. *Connecticut Co.*, 94 Conn. 201, 108 Atl. 556; *Fine* v. *Connecticut Co.*, 92 Conn. 626, 631, 103 Atl. 901. It is important that this be constantly borne in mind, as apparently it is not, in any attempt to make practical application of the last clear-chance principle. Otherwise, the place which contributory negligence holds in our law is lost sight of.

Bearing in mind these observations, and remembering that we are pursuing an inquiry based upon the assumption that the plaintiff's version of the facts is correct in so far as it concerns the matter of the decedent's turn to enter Dorus Street, and might have been so found, an obviously important step in it is the location of the position of the car when the decedent's team first arrived in a place of developed present danger and the motorman knew or must reasonably have known of the existence of that danger. It may be assumed that the moment of his knowledge was coincident with that of the creation of the danger. The evidence, although conflicting, furnishes a reasonable foundation for a finding that the car was about three hundred feet or possibly a little further away when the deceased, by swinging in toward the westbound tracks, so clearly indicated his purpose to cross them that the motorman detected it and shouted a warning. But how far had this swinging in or subsequent more obvious turning proceeded at this time? Had the team reached a point when it was in the car's path or was it still away and so

far away that an easily available change of course might have been made by the driver and anticipated by the motorman? Had it reached some other point where the hazard of being hit by the car was so fully developed that it could only be averted by measures of escape on the decedent's part if the car continued on its way, or had it not? Where was the car when either of these points was reached by the team? These are all important inquiries upon which the evidence fails to throw any real light. The car was traveling on a down three per cent grade and was going at a rapid rate, estimated by one of the plaintiff's witnesses as high as thirty miles an hour. The only evidence relating to the motorman's control of the car was offered by the plaintiff, and was to the effect that, if proceeding at twenty miles an hour, it could not have been stopped in less than one hundred and seventy feet. The margin of time for effective emergency action on the part of the motorman, was, therefore, at the most exceedingly limited. Such action to have been availing must have been begun when the car was at least one hundred and seventy feet from the place of accident. If the verdict deserved to stand, it must have been for the reason that the evidence furnished a reasonable basis for a finding by the jury that the team came into the zone of actual present danger when the car was still that distance away. That it fails to do. The trial court rightly so held and ruled.

There is no error.

In this opinion the other judges concurred.