FRANK CORRENTI *vs.* JAMES CATINO.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

214

Argued April 8th—decided June 21st, 1932.

*David Goldstein,* with whom was *John P. Flanagan,* for the appellant (plaintiff).

*Lorin W. Willis,* for the appellee (defendant).

MALTBIE, C. J.   The plaintiff offered evidence to prove and claimed to have proved that, on a certain evening, he had been standing for some minutes upon the west sidewalk of West Main Street in Stamford; that, having looked both to the right and the left without observing any approaching traffic, he proceeded to cross the street in an easterly direction; that the street was about forty feet wide and was well illuminated; that there were several automobiles standing on the further side of the street, waiting for a traffic sign at a street intersection somewhat to the north to change so that they might proceed; that the plaintiff continued to look to the right and the left as he crossed the street; that when he was about

one third the distance across he noticed to his left a bus turning into the street from the cross street; that as this bus passed in back of him, he noticed for the first time to his right at a distance of approximately thirty-five yards defendant's automobile proceeding in a northerly direction toward him; that he continued to walk across the street; that while he was still in the traveled portion of the street the defendant, who had continued to operate his car at a fast rate of speed, ran into him; and that the defendant's lights were lighted and his view to and beyond the plaintiff was unobstructed. The defendant, on the other hand, claimed to have proved that the plaintiff ran across the highway, through the traffic, and finally ran into the left front fender of his car.

The principal error claimed is the failure of the trial court upon the request of the plaintiff to instruct the jury upon the doctrine of supervening negligence or the last clear chance. The frequency with which this doctrine is invoked, particularly where pedestrians are struck by automobiles while crossing streets, seems to require that we restate our law with reference to it, and reconsider its application in such cases. In the first place, in order to take advantage of the doctrine, the plaintiff must insert in his complaint allegations affording a basis for a finding of the negligent conduct upon which he bases his claim of liability under the doctrine. *Mezzi* v. *Taylor*, 99 Conn. 1, 10, 120 Atl. 871; *Annes* v. *Connecticut Co.*, 107 Conn. 126, 129, 139 Atl. 511; *Tardieu* v. *Connecticut Co.*, 113 Conn. 94, 95, 154 Atl. 173. But even if he has done this, the trial court need not consider the doctrine or charge the jury with reference to it unless his purpose to invoke it as an issue in the case is evidenced either by a definite reference to it in the complaint or by claiming it to the court upon the trial, preferably in

a jury case by a request to charge. *Mezzi* v. *Taylor, surpra; Russell* v. *Vergason,* 95 Conn. 431, 434, 111 Atl. 625; *Schmeiske* v. *Laubin,* 109 Conn. 206, 211, 145 Atl. 890; *Zenuk* v. *Johnson,* 114 Conn. 383, 158 Atl. 910. It is also to be remembered that the application of the doctrine presupposes that the plaintiff has been guilty of negligence. *Carbone* v. *Krott,* 100 Conn. 414, 123 Atl. 923; *Notarfrancesco* v. *Smith,* 105 Conn. 49, 57, 134 Atl. 151. If upon the evidence the only claims of proof reasonably open to acceptance are that the plaintiff was free from negligence or that he was negligent and his negligence continued to the time of the injury and was an efficient cause of it, there is no place in the case for the application of the doctrine. *Radwick* v. *Goldstein,* 90 Conn. 701, 710, 98 Atl. 583; *Lukosevicia* v. *Bartow,* 99 Conn. 723, 122 Atl. 709; *Rooney* v. *Levinson,* 95 Conn. 466, 468, 111 Atl. 794; *Notarfrancesco* v. *Smith,* 105 Conn. 49, 55, 134 Atl. 151. But the plaintiff may claim its application if the evidence affords a reasonable ground for finding the necessary facts, though this evidence be in part that offered by the defendant. The burden of proving the necessary facts to establish the elements justifying the application of the doctrine is upon the plaintiff; *Plona* v. *Connecticut Co.,* 101 Conn. 445, 448, 126 Atl. 529; and if he fails to afford a reasonable basis for finding each and all of these elements to have existed the doctrine may not be applied. *Petrillo* v. *Connecticut Co.,* 92 Conn. 235, 236, 102 Atl. 607; *Curtis* v. *Bristol & Plainville Electric Co.,* 102 Conn. 238, 128 Atl. 517; *Oddwycz* v. *Connecticut Co.,* 108 Conn. 71, 142 Atl. 406; *Budaj* v. *Connecticut Co.,* 108 Conn. 474, 476, 143 Atl. 527.

The conditions necessary for the application of the doctrine are stated in *Fine* v. *Connecticut Co.,* 92 Conn. 626, 631, 103 Atl. 901, as follows: "Situations

coming within the operation of the principles attempted to be stated by the court are those in which four conditions co-exist, to wit: (1) that the injured party has already come into a position of peril; (2) that the injuring party then or thereafter becomes, or in the exercise of ordinary prudence ought to have become, aware not only of the fact but also that the party in peril either reasonably cannot escape from it or apparently will not avail himself of opportunities open to him for doing so; (3) that the injuring party subsequently has the opportunity by the exercise of reasonable care to save the other from harm; and (4) that he fails to exercise such care." See also *Rooney* v. *Levinson*, 95 Conn. 466, 468, 111 Atl. 794; *Richard* v. *New York, N. H. & H. R. Co.*, 104 Conn. 229, 235, 132 Atl. 451; *Sacks* v. *Connecticut Co.*, 109 Conn. 221, 233, 146 Atl. 494. "The word 'subsequently,' as used in the third condition, obviously means subsequent to the acquisition of the knowledge referred to in condition two, or to the time when that knowledge ought, in the exercise of due care, to have been obtained." *Tullock* v. *Connecticut Co.*, 94 Conn. 201, 207, 108 Atl. 556.

Any consideration of the nature of the doctrine must start with the case of *Nehring* v. *Connecticut Co.*, 86 Conn. 109, 84 Atl. 301, where JUDGE PRENTICE discussed it at length in the light of the various situations in which it might be invoked. He draws a clear distinction (p. 120) between those situations where the doctrine is applicable and those where it is not, based upon a determination whether the plaintiff, though he came into a position of peril by reason of his own negligence, has done "nothing to create or materially change that situation by active conduct which was not marked by reasonable care" and is merely "passively permitting an already fixed condition to remain

unchanged" or "is, by acts of his [own] volition, bringing into the situation which confronts the defendant changed conditions and, in the fullest sense, co-operating with the latter in bringing about the ultimate result." He then discusses the situation where it is reasonably apparent to one who inflicts the injury that the injured person is careless of his safety and that in continuance of his carelessness he is about to place himself in a position of danger, which he subsequently does, and where the former thereafter, having a reasonable opportunity to save him from injury, fails to do so. In such a situation the opinion holds that the doctrine is not applicable, because the plaintiff's want of care is a substantial factor in bringing about the injury. "Upon what theory or foundation in reason it can be said that, under the circumstances assumed, it is not an efficient cause of that result co-operating concurrently with the other cause to be found in the other party's negligence, we are unable to discover. The causal connection is plain to be seen, and the act of causation is that of a positive act of volition. The two actors upon the scene owe precisely the same duty to be reasonably careful. . . . Neither occupies in that regard a superior position, and the one who suffers can claim no precedence over his fellow actor or at the hands of the law. To say that no matter if one be negligent in going forward into danger, or in creating new conditions or complicating them, the law will protect him and cast upon the other party the responsibility for the result, is to ignore the fundamental principle of contributory negligence and bring the law upon that subject into hopeless confusion, and merit for it the condemnation which Thompson has so forcibly expressed."

A series of later cases served to develop the basic distinction which runs through the discussion in the

*Nehring* case, between those situations where by his negligence the plaintiff has placed himself in a position of peril, but thereafter has been guilty of no negligent conduct which materially changed the conditions confronting the defendant and those where the negligence of the plaintiff continues as an efficient and substantial factor down to the injury and directly contributes to produce it. *Hygienic Ice Co.* v. *Connecticut Co.,* 90 Conn. 21, 96 Atl. 152; *Radwick* v. *Goldstein, supra; Fine* v. *Connecticut Co., supra; Tullock* v. *Connecticut Co.,* 94 Conn. 201, 207, 108 Atl. 556; *Pattenden* v. *Connecticut Co.,* 98 Conn. 370, 119 Atl. 348; *Deutsch* v. *Connecticut Co.,* 98 Conn. 482, 119 Atl. 891. The distinction is perhaps best explained in *Bujnak* v. *Connecticut Co.,* 94 Conn. 468, 109 Atl. 244, a case where the plaintiff offered evidence to prove that he approached a trolley track upon a long diagonal course and was struck by a trolley car while upon it. We there held that, though the defendant's motorman might have been negligent in failing to observe the approach of the plaintiff and to take steps to avoid injury to him, yet the negligence of the plaintiff in failing to observe the approaching trolley car as he drove toward the track would also be a concurring cause of the injury. We said (p. 472): "During the development stage the motorman and decedent were each chargeable with contributing, materially and efficiently, to produce the dangerous situation that eventually developed through their co-operating misconduct, and it was equally within the power of each, down to a certain point of time to prevent the creation of a situation of actual exposure. That point arrived when the decedent's danger ceased to be a merely threatening or imminent one and became one of actual exposure to a present hazard, from which safety was to be found only in measures of escape therefrom. It cannot fairly

be said that before that moment of time had arrived, the negligence of the defendant's servant in not stopping his car was any more responsible for the resulting disaster than the decedent's in heedlessly placing himself in the car's path, or that the defendant's motorman occupied a superior position in that he had at command better facilities or opportunities to secure the decedent's safety than did the latter himself. . . . The time came when, the development stage having passed, the decedent, owing to his want of care in part at least, stood in actual present peril, that is to say, where, if he did nothing by way of resort to preventive measures, the on-coming car, if not stopped, would hit his team—where, in other words, it was no longer a question of getting into trouble but one of escape from a trouble he was actually in. . . . It is from that moment that the inquiry involved in the application of the so-called last clear chance doctrine begins. It is not concerned with earlier happenings or conditions, but only those then existing or subsequently arising, and it is upon them, and them alone, that the determination of the question involved is dependent. . . . It is important that this be constantly borne in mind, as apparently it is not, in any attempt to make practical application of the last clear chance principle. Otherwise, the place which contributory negligence holds in our law is lost sight of."

In *Richard* v. *New York, N. H. & H. R. Co.*, 104 Conn. 229, 132 Atl. 451, we had before us a case where a driver of a wagon was struck upon a railroad crossing and we again emphasized the distinction drawn in the *Bujnak* case. We said (p. 236) : "If the defendant's counsel is correct in this position, the last clear chance doctrine would have application to no situation where the injured person is moving while within the zone of danger. This is a mistaken conception of our holding

in the *Nehring* case, *supra*. What we there held was that where the injured person placed himself in a dangerous situation, and continued therein through a failure to awake to his surroundings, the continuance of the injured person in his dangerous surroundings cannot be regarded as the proximate cause of his injury, while his want of care in entering the zone of danger will be regarded as a remote and not a proximate cause. Where, however, the injured person, before entering the zone of danger, although . . . about to enter it, continues on toward it, each advance that he makes is a new act of negligence on his part, and if injury results through his own negligence and that of another there can be no recovery, for each must be regarded as a proximate contributor to the injury resulting from their concurrent negligence. Whether the injured person after entering the zone of danger were asleep, or unconscious, or heedless of his surroundings and pushed on further into the zone of danger, although not increasing his danger, the passive conduct of the injured person while within the zone, or his active conduct while within the zone in penetrating further into it—no new act of his after entering the zone of danger intervening helping to produce the conditions under which the injury was received—cannot be held to be an act of negligence on his part and a proximate cause of his subsequent injury. Applying this doctrine to the facts in this case. After Richard entered the zone of danger, that is, after driving his team so close to the track as to be in danger of a collision with an engine, he continued on heedless of the approaching train, his penetration into the zone of danger was not a new act of negligence on his part and his conduct was not a contributing cause of his injury after the defendant saw or ought to have seen him in the zone of danger, and that apparently he was heedless of his

danger and either could not escape from his peril or would not avail himself of his opportunity to escape."

Where a plaintiff is struck while walking along a railroad or trolley track or along a highway by a vehicle approaching from the rear, he may have been guilty of negligence in getting into a position of peril and may be guilty of negligence in failing to discover the approach of the car and take steps to avoid injury from it; but neither negligence is of a nature to defeat a recovery if the necessary elements of the doctrine are established. *Omiccioli* v. *Connecticut Co.*, 96 Conn. 716, 115 Atl. 475; *Waselik* v. *Ferrie Construction Co.*, 114 Conn. 85, 157 Atl. 642; *Zenuk* v. *Johnson*, 114 Conn. 383, 158 Atl. 910. In such cases he comes into a position of peril, though by his own negligence, but thereafter may often have done nothing actively to change the existing situation or to bring about the resulting injury. Most of the cases we have cited present a situation where the plaintiff was struck by a trolley car or railroad train while crossing a trolley or railroad track. In such instances the limits of the position of peril are easily determined; they include the space occupied by the track and adjoining space so near to it that anyone within it is liable to injury by an approaching car; and the question whether the doctrine applies is to be solved in accordance with the opinion in the *Bujnak* case. The situation of the pedestrian crossing a highway and struck by a passing automobile presents greater difficulties. In the case of a much frequented highway or a busy city street, he is in a sense in a zone of danger at all times when he is upon the roadway. This consideration led us to say in *Russell* v. *Vergason*, 95 Conn. 431, 435, 111 Atl. 625, that the doctrine of the last clear chance would have justified a verdict for the plaintiff, where the jury might reasonably have found that she walked across a

street some fifty-five feet in width, without stopping or looking to the north, from which direction the defendant's automobile was coming, and when about three feet from the opposite side was struck by it, and where the defendant had neither given warning of his approach nor done anything to avoid her. In that case failure to invoke the doctrine on the trial prevented its application in the actual decision. That case was followed, however, and the doctrine applied in a similar case. *McLaughlin* v. *Schreiber,* 105 Conn. 610, 136 Atl. 467. In a similar case later, on the other hand, we said that upon the evidence it was extremely doubtful whether the doctrine could have any application. "Even if the defendant should have been aware that the plaintiff was about to walk into the path of the car unconscious of his peril, he could hardly have been aware of it soon enough to have saved the plaintiff from harm by the exercise of due care. The jury could perhaps reasonably have found that the defendant was negligent in not seeing the plaintiff sooner than he did, but even if he had seen him from the time he stepped off the curb into the street, he could hardly have been aware that the plaintiff was in a position of actual danger from which he could not or would not escape, until the two parties were in close proximity. It is a common practice for pedestrains to cross the street among moving automobiles, and indeed the heavy traffic upon most of the principal streets of our cities today, makes this necessary in the absence of traffic lights or officer, if one is to cross at all. The defendant had no reason to suppose, even if he had seen the plaintiff start across, that he would continue to walk, or run, into the path of the car. On the contrary, with lights aglow and in the plain sight of the plaintiff, the defendant would have been justified in believing that the plaintiff saw

him and would stop short of the path of the car. The danger really arose when the plaintiff indicated that he was not going to do this. There was obviously but a couple of steps in distance and perhaps a second of time between a position of safety and one of danger for the plaintiff." *Paskewicz* v. *Hickey,* 111 Conn. 219, 224, 149 Atl. 671.

The differing viewpoints finding expression in these opinions require a reconsideration of the application of the doctrine to the situation of the pedestrian who is struck by an automobile while crossing a street. Upon the principles we have reviewed, which lie at the basis of the doctrine, it cannot apply in any situation where the negligence of the plaintiff continues as an efficient cause in the production of the injury down to its actual occurrence; it can apply only when the plaintiff by his negligence has brought himself into a position of peril and thereafter has committed no negligent act materially changing the existing situation. Position of peril cannot be determined on the basis of the general dangers inherent in the particular situation but must be related to the conduct of the defendant in the particular case. While a pedestrian may be in a zone of danger as soon as he steps from the sidewalk to the street where vehicles are passing, he is not then necessarily in danger from any particular automobile. Until he reaches a point where he is in a position of peril from the automobile of the defendant and further progress on his part or other negligent conduct will not increase his danger, his negligence in proceeding forward can only be regarded as a contributing proximate cause of the injury. Until then, to apply the words of the *Bujnak* case already quoted, he and the defendant are "each chargeable with contributing, materially and efficiently, to produce the dangerous situation that eventually develops through

their co-operating misconduct, and it was equally within the power of each, down to a certain point of time to prevent the creation of the situation of actual exposure." Just when in his progress across the street a pedestrian has arrived at a position of peril from an approaching automobile may not be fixed with the accuracy possible in case of vehicles running upon fixed tracks but must be left to the sound judgment of the trier; in a trial to the jury, the doctrine should not be submitted to them unless the evidence affords a reasonable basis for finding that the plaintiff had come into that position such a length of time before the injury as to give opportunity for the operation of the second, third, and fourth elements above mentioned. Where both the pedestrian and the driver of the automobile proceed in their course to the moment of collision and the former does not come into the position of peril from the automobile until substantially the instant he is hit, the doctrine can have no place in the case. To this extent we overrule the case of *McLaughlin* v. *Schreiber.*

Neither the plaintiff's claims of proof in the case nor those of the defendant afford a basis for the application of the doctrine. The trial court was therefore right in refusing to submit the issue of supervening negligence to the jury.

The instruction of the trial court to the jury that they were to disregard any question of insurance in their determination of the case was well within its discretion and its reference in that connection to a preceding case where the jury had been frankly told that the defendant was insured but had nevertheless brought in their verdict for him, while it might better have been omitted, cannot constitute reversible error.

There is no error.

In this opinion the other judges concurred.