WILLIAM KINDERAVICH
*vs.*
HOWARD S. PALMER, ET AL.

Superior Court      New Haven County      File No. 54492

MEMORANDUM FILED JULY 26, 1939.

*William H. Burland,* of New Haven, for the Plaintiff.

*Edwin Hall,* of New Haven, for the Defendants.

O'SULLIVAN, J. This action, brought against the trustees of the New Haven Railroad Company, was tried to the jury and resulted successfully for the defendants. The plaintiff now moves to set the verdict, aside and assigns as reasons therefor that the court erred in its charge and in one of its rulings.

There is not much disagreement between the litigants concerning the facts. Sketched somewhat briefly they are as follows: Shortly before midnight on September 15, 1937, the plaintiff was proceeding westerly on foot across a bridge spanning a canal in the manufacturing section of Shelton. Just west of the bridge and paralleling the canal is the right of way of the railroad, which maintains at grade a double set of rails, one for north and the other for southbound traffic. The plaintiff passed over the first set and walked into the path of a southbound engine hauling a long string of freight cars. The headlight was on bright and had the plaintiff looked to his right as he walked along, he could have seen the train approaching for a distance of over a thousand feet.

The collision tossed the plaintiff back to the northbound track, where he lay unconscious, his body resting on the ties between the rails and his left arm over one of them. Some ten or fifteen minutes later, a northbound train came along and passed over the man, severing the arm completely from the body.

In its instructions to the jury the court said, in substance, that as the case was tried and argued, a burden rested on the plaintiff to establish his own freedom from contributory negligence, and that if the jury concluded that the plaintiff was guilty of negligence which materially contributed to his encounter with the southbound train, the effect of which was to render him unconscious, such negligence would, as a matter of law under the peculiar circumstances of the case, be of continuing effect, sufficient to bar his recovery for the subsequent event wherein he lost his arm.

It is argued that whether the plaintiff was guilty of negligence contributing materially to the second accident was a question of fact for the jury. With this, I now agree, a position contrary to that adopted at the trial.

The principles applicable to the doctrine of proximate cause

must be considered and followed in deciding the merit of the motion. No one may seriously contend that the negligence of a plaintiff does not bar recovery. It is only such negligence as materially contributes to his injuries that precludes one from obtaining a verdict. Granted that the plaintiff got himself upon the northbound track because of his own negligence, it by no means follows that such negligence was the proximate cause of the loss of the arm. To be the proximate cause, it must have been simultaneous in its operation with the claimed negligence of the engineer of the northbound train, of the same kind, immediate, growing out of the same transaction, and not something distinct and independent, of a prior date, remotely related to the defendants' negligence. *Isbell vs. New York & New Haven Railroad Co.*, 27 Conn. 393, 406. This annunciation of appellate opinion is ample warrant for reaching the conclusion that whether the plaintiff was guilty of contributory negligence was a question of fact which ought to have been submitted to the jury.

The only case which a fairly exhaustive research has brought to light, involving analogous facts, is, fortunately, strikingly similar in detail and adds authoritative weight to the conclusion of this court. *McKeon vs. Steinway Railway Co.*, 20 App. Div. 601, 47 N.Y.S. 374. In that case, MecKon drove his horse and truck—for it was in the horse and buggy days—up to the gateway of his employer's premises. Finding the gate locked, he backed his horse into the street in such a manner as to cause the hind end of his truck to project over the rails of the defendant's trolley track. He then saw an approaching car, but instead of getting the truck off the track, he proceeded to mount the wagon to drive away. Before he was able to do so, the trolley collided with the rear of the truck, which caused the horse to run away, and at a point some distance from the scene of the collision, McKeon was thrown from the truck to the ground where he lay unconscious on the defendant's track. A few minutes later another trolley car came along and injured him. The trial court charged that if the original collision was due to McKeon's contributory negligence, the defendant was entitled to a verdict. This was declared erroneous, the Appellate Division stating (p. 603) that "although the injury may not have occurred but for the negligence of [McKeon], his antecedent negligence may not be concurrent or simultaneous in such sense as to relieve the [defendant] from the consequences of his negligence.... [McKeon's] negligence as a remote cause, and

creating a condition of peril from which he is unable to relieve himself, does not excuse the want of care in another to avoid injuring him."

Had the plaintiff in this case, after being hit by the south-bound train, been thrown in front of another train passing at the time, his contributory negligence in walking into the first train would bar his recovery, because of the simultaneousness of the events which occurred. As a matter of law, such negligence could not be classified as remote. But the lapse of time between the two accidents furnishes an instance of two transactions, each distinct from the other. The one ended when the prostrate body landed on the northbound tracks. The full extent of the injuries from that transaction and the liability, if any, were fixed at that time. The subsequent events furnish the items of a new transaction. Whether the act of negligence which caused him to assume involuntarily the position of danger on the north-bound track was remote or proximate to the second injury is a question about which reasonable minds may differ. Hence, it was a question of fact for the jury to determine.

But an additional reason is available for granting the motion. If ever there was a case suggesting the wisdom of relying upon the doctrine of supervening negligence, the present one fur-nishes an instance. However, the complaint did not suggest the doctrine nor was any request to charge filed. In his opening argument, counsel for the plaintiff made no reference to it but discussed the case to the jury as one in which a plaintiff's ver-dict could not be rendered unless freedom from contributory negligence was established. If nothing further had occurred, the court would have been jusified in failing to bring the doc-trine into the case. "The trial court need not consider the doctrine or charge the jury with reference to it unless his [plaintiff's] purpose to invoke it as an issue in the case is evi-denced either by a definite reference to it in the complaint or by claiming it to the court upon the trial, preferably in a jury case by a request to charge." *Correnti vs. Catino,* 115 Conn. 213, 215.

However, at the conclusion of the opening argument, the court addressed counsel on the application of a certain statute concerning railroad crossings. In the course of the colloquy which ensued, counsel, among other things, said, "And we rely on the last clear chance doctrine." This was the first intimation suggesting that reliance was to be made upon it. After some

further discussion, the court ruled that the plaintiff was not entitled to have it presented to the jury.

Rulings made in the course of a trial quite naturally lack the deliberation which can be given when considering a motion of the sort at hand. Viewed in retrospect, the ruling was wrong and extremely prejudicial to the plaintiff. After all, a law action is not a method of determining the skill either of pleader or trier and a court's function is not to assume the place of a debating society. Human and property rights should not be subordinated to procedural technicalities.

This plaintiff suffered a very severe and permanent physical injury. While it is highly desirable to end litigation, it is more desirable to end it rightly. Perhaps, upon another trial of this cause, the defendants may again succeed, and I lean to the belief they will. But this plaintiff ought to have the right to rely upon all theories which the law has created for his benefit.

Accordingly, the verdict is set aside.