LOUIS SACKS, ADMINISTRATOR, *vs.* THE CONNECTICUT COMPANY.

Third Judicial District, New Haven, January Term, 1929.
WHEELER, C. J., HAINES, HINMAN, BANKS AND BROWN, JS.

Argued January 17th—decided May 21st, 1929.

*Walter W. Smyth,* with whom, on the brief, were *John H. Cassidy* and *Lawrence L. Lewis,* for the appellant (plaintiff).

*William J. Larkin, Jr.,* for the appellee (defendant).

WHEELER, C. J.   The plaintiff offered evidence to prove:  Watertown Avenue in the city of Waterbury

extends in a northerly and southerly direction and is the main thoroughfare between the center of the city and the suburbs of Oakville and Watertown and is much traveled by automobiles, particularly between the hours of five and seven p.m. Carter Avenue leads westerly from Watertown Avenue to a part of Bunker Hill section. The west side of Watertown Avenue was of cement surface, the easterly edge of which was about two feet from the westerly rail of the defendant's westerly or southbound set of tracks, while five and twenty-nine one-hundredths feet to the east of this set of tracks was the easterly or northbound set of defendant's tracks. The rails of each track were four and seventy one-hundredths feet apart. The defendant had designated as a stopping place for both its northbound and southbound cars a point opposite the intersection of these two avenues and indicated this by white bands painted on two poles, one on each side of the highway. It had also constructed at the white pole east of the northbound track a platform about four and two-thirds feet wide and thirty-five feet long made of cinders and dirt packed down hard. This was used by passengers alighting and about to take northbound cars, and by passengers waiting for and about to take southbound cars. The entrance for passengers to the southbound car which struck the decedent was at the front end of the west side of the car and about two feet from the cement surface of the highway. This car was a one-man car, entrance to which was not allowed on the left-hand front door although the car was equipped with such a door. The defendant had also constructed a path of cinders and dirt from this platform across these tracks to the cement portion of the highway, which was used by passengers in going from the west side of the highway across these tracks to the platform and in crossing the tracks from the

platform to the west side of the highway and to a point on the cinder path west of the west rail, from which point the passengers boarded the southbound cars. It was dangerous, particularly between these hours, for a prospective passenger for a southbound car to stand in the highway opposite the white pole to await the southbound car, and this danger was increased when it was dark. A passenger standing at the curb on the westerly side of the highway would not be seen by the operators of southbound cars when it was dark. Watertown Avenue was straight for one thousand feet north of Carter Avenue and there were no physical objects to impair the view along the defendant's tracks north of the white pole for this distance. It was the custom of the prospective passengers coming from the west side of the highway to cross the tracks as described, and await on the platform the coming of the southbound car. The defendant knew of the custom and of the danger to passengers standing on the highway west of the southbound track. The designated white pole next north of that at the intersection of these avenues was at the intersection of Bunker Hill Avenue, about one thousand feet distant. At the time and place of the accident there was no grade, the rails were dry and the conditions good. The operator of this car had worked on this line many times before; he knew that he might expect that passengers would board cars at this point.

The decedent owned a gasoline station at the intersection of Carter and Watertown Avenues on the west side of Watertown Avenue. An arc street light on a pole stood on the south side of this intersection. At the time of the accident the artificial light from the gasoline station and the arc light was sufficient to illuminate the highway, the two sets of tracks, the path across them, the platform and the area near and sur-

rounding the white pole on the easterly side of the tracks.

On December 3d, 1927, at about six forty-five p. m., the decedent walked from her gasoline station to the white pole on the west side of the highway and during a lull in the traffic crossed the cement portion of the highway over the defendant's tracks to the platform to await the southbound car which was then at Bunker Hill Avenue. When the car left that stopping point the decedent left the platform and stood between the rails of the two tracks, looked toward the approaching car and signalled it to stop by lifting her right hand. The decedent relied upon the fact that the operator of the car would see her and her signal and would bring the car to a stop at the white pole and allow her to pass in front of the car so that she could enter at the right front end. The car struck the decedent when she was crossing in front of the same, and as she was between the rails of the southbound track and two feet easterly of the west rail thereof. The operator of the car failed to sound the gong or bell, or give any signal of warning that he was not going to stop at this stopping point.

The operator saw or should have seen the decedent when she was giving this signal, had he been keeping a proper lookout, and he should have known that she was a prospective passenger on his car. The operator did not keep a proper lookout and did not see the decedent until just an instant before the car struck her; she was then walking straight across the tracks and five or six feet in front of the car and two feet inside of the west rail of the southbound car. He stopped the car in thirty-six feet, which was said to be a good stop. The street car was equipped with two headlights, a Golden Glow, which showed one hundred feet ahead of the car and two feet either side

thereof, and a city light which gave little light. The operator did not pull down the curtain in back of him, provided by the defendant, although its rules required that it be down when the lights inside the car were lighted, and the failure to do this caused the view of the operator ahead to be impaired. Because of interference by headlights of oncoming autos on the highway, the operator could see only eight feet ahead of him as he operated this car from Bunker Hill Avenue where he made a stop to take on a passenger.

The defendant introduced no evidence, but claimed from the evidence introduced by the plaintiff that the defendant was not guilty of negligence and that the decedent was guilty of contributory negligence.

The court instructed the jury that it was the duty of the motorman to have operated the car as a reasonably prudent man would have under the circumstances, to have kept a reasonable lookout and to have seen what a reasonably prudent man would have seen, and that he knew that the place where the decedent was struck by the car was a stopping place for people on signal to get on or off the car and that if the motorman saw or should have seen the decedent, standing at the white pole, or about to cross the tracks, it was his duty to have reduced the speed of his car and brought it to a stop to avoid doing the decedent an injury.

The plaintiff requested the charge: "It was the duty of the operator to keep a proper lookout for persons in front of or at either side of the street car when in operation; to keep a proper lookout means to see a person within a reasonable distance in front of or to either side of the street car; it is for you to determine whether or not the operator, Connor, kept such a lookout, if you find that he did not and it was because of this failure that Dora Sacks was injured, then this

failure is negligence on the part of the defendant." The plaintiff was entitled to this instruction. The motorman "must observe the streets adjacent to the track sufficiently to enable him to ascertain whether persons are approaching or are about to approach the track, and, if such persons are in danger of being struck by the car, he must do all that an ordinarily careful and prudent motorman would do to avoid injury." *Glettler* v. *Sheboygan L., P. & R. Co.,* 130 Wis. 137, 138, 109 N. W. 973.

The request that, "It is the duty of a street railway company to exercise the highest degree of care in approaching a stopping place where prospective passengers are apt to be, in order not to injure them," is not our rule of law. It was the duty of the motorman, leaving out for the present the element of the lights of the automobiles blinding him, in view of the liability of taking on passengers at this stopping point and of their custom, known to the company and to him—of their waiting for the car on the platform east of the northbound track and then upon the approach of the car recrossing the two tracks in front of the car and boarding the car at this crossing on the west side of the southbound track—to exercise great care as the danger to prospective passengers was great. That would involve having the car under reasonable control in the light of the circumstances of danger, reducing its speed as it approached the stopping point and keeping a sharp lookout for prospective passengers, so that if necessary the car might be brought to a stop before reaching the crossing. If the situation was as the motorman claimed it—an inability on his part, due to the lights from approaching automobiles, to see the decedent upon the platform or her signal, if she did signal, or while crossing the tracks, until she was about two feet from the west rail of the southbound track

and not over five feet from his car, which was traveling at the rate of fifteen miles an hour—it is obvious that the motorman could not then have prevented the injury to the decedent. But his operation of the car at this rate of speed, with no endeavor to have the car under control, without giving warning that no stop would be made at this crossing, and knowing the liability of passengers being upon or near this crossing, made it his duty to have kept a close and searching lookout, given warning by gong or bell that the car would not stop, and to have reduced the speed largely so that he might have brought his car to a stop before it reached the crossing.

We apply the rule in *Murphy* v. *Derby Street Ry. Co.*, 73 Conn. 249, 253, 47 Atl. 120, in these words: "The duty of a corporation like the defendant, to use every reasonable precaution to minimize the danger to the public growing out of its exercise of the special privileges granted it in the use of highways, is clear. . . . It appears from the record that the trial court ruled that whenever a car of the defendant was rapidly approaching a point where, from the existing condition and occupancy of the highway, it was apparent that the danger of injury to the public at that time and place would be materially lessened by sounding the bell, it was the duty of the defendant and of its motorman to sound the bell. The ruling is correct."

The plaintiff requested the court to charge: "It was the duty of the defendant to equip its car with a headlight to illuminate the ground in front of and on either side of the car when in operation, to a distance sufficient to reasonably make clear to the operator persons or objects a reasonable distance in front of or to either side of said street car." The request, while not in the precise terms stated in *Currie* v. *Consolidated Ry. Co.*, 81 Conn. 383, 71 Atl. 356, was framed

so as to be sufficiently within its intendment. The trial court properly refused to so charge, since there was nothing in the finding which shows that the car of the defendant was not so equipped, but the contrary appears with reasonable clearness.

The court was also right in refusing to comply with the request to charge: "It was the duty of the motorman when driving at night to have his car under such control as to be able to timely stop it within the limits of his vision." We do not recognize in this jurisdiction this rule of law. Our test of duty is that of the reasonably prudent man under the same circumstances as surrounded the actor. *Rozycki* v. *Yantic Grain & Products Co.,* 99 Conn. 711, 122 Atl. 717; *Kaufman* v. *Hegeman Transfer & Lighterage Terminal, Inc.,* 100 Conn. 114, 123 Atl. 16; *Rice* v. *Foley,* 98 Conn. 372, 119 Atl. 353; *Currie* v. *Consolidated Ry. Co., supra.* Weather conditions, or automobile headlights, for example, may affect the vision in such a way as to prevent the control of a trolley car or an automobile, and so as to prevent the timely stopping of it within the limits of the vision of the operator of the automobile or trolley car. Under these conditions manifestly there would not, in the ordinary case, be a failure to exercise reasonable care. This general rule is subject to the qualification that the circumstances surrounding the issue of reasonable care may be so exceptional as to make it one of law. *Ezzo* v. *Geremiah,* 107 Conn. 670, 675, 142 Atl. 461. In *Murphy* v. *Derby Street Ry. Co.,* 73 Conn. 249, 253, 47 Atl. 120, we recognize the existence of the exception where "the reasonableness of a particular precaution against danger, arising from conditions well defined and constantly recurring, may be a question of law." See also *Kerr* v. *Connecticut Co.,* 107 Conn. 304, 308, 140 Atl. 751. In *Kaufmann* v. *Hegeman Transfer & Lighterage Terminal, Inc.,* 100

Conn. 114, 123 Atl. 16, we held that the speed at which one can travel safely at night depends upon all the circumstances of the case and unless they unmistakably point to one conclusion the question is one of fact.

The place of this accident was a regular stopping point for the defendant's southbound cars when a passenger was at this point and upon the motorman seeing the passenger, or the signal to stop of the passenger, he was accustomed to stop to take on board the passenger. The platform on the east and the path from it across the tracks had been prepared by the defendant for the use of its passengers so that they might not be required to stand in the highway and incur the danger of being struck by the automobile traffic. The decedent when struck was where she had the right to be, upon the highway and upon the path placed there by the defendant for the use of the passengers in boarding a southbound car. The motorman knew all this. He also knew passengers were liable to board his car at this point and that at the hour of this accident the automobile traffic on the highway west of the southbound track was very heavy and that the lights of these vehicles seriously interfered with his vision. His own statement was that he could see only eight feet ahead of his car. He was traveling, he says, at a speed of fifteen miles an hour. If this was the situation, there was no possibility of his stopping his car within the space of the eight feet and as a consequence there was the certainty that if a passenger was on the southbound track, or so near it as to be struck while walking across the path, his car would strike and injure the passenger. All of these circumstances, except his statement that he could see only eight feet ahead of the car, were of a permanent or recurrent character. The jury might have further found that

the motorman gave no warning by gong or bell to the decedent that his car would not stop at the stopping point, nor did he slacken his speed as he approached the crossing, nor have his car under such control that he could stop it within the limit of his vision. If the jury found all of these facts proven, the car so operated would be a menace to prospective passengers and the question of the defendant's exercise of reasonable care would have been brought within the exception of *Murphy* v. *Derby Street Ry. Co., supra,* and this question made one of law and not of fact making it the duty of the trial court to have instructed the jury that if they found all of these facts established they should find the defendant to have been negligent. Therefore, the plaintiff would, upon his request, have been entitled to an instruction that if the jury found these facts established they should find the defendant to have been negligent.

The court, in compliance with plaintiff's request, charged the jury upon the subject of the last-clear-chance doctrine as follows: "Now, I have been asked to charge you on the last clear chance. The doctrine of the last clear chance is this—if the deceased was negligent in coming onto the trolley track . . . in a place of danger where she would be struck if she remained there, and, after the motorman knew or should have known by the use of his—the proper use of his senses as a reasonably prudent man that she was in a place of danger and that she could not escape or would not escape, then it was his duty to stop if he could; and if, after he knew that or should have known it, he could have stopped and avoided the accident, and failed to do so, then the defendant would be liable even though the plaintiff was negligent in getting there. But if the testimony of the motorman is true, that he did not see her and could not have seen her

with any reasonable lookout until he was within five feet of her, of course he did not then have a possible chance of avoiding the accident. And if she was negligent in going there, and her negligence materially contributed to the accident, of course she was guilty of contributory negligence and the plaintiff cannot recover."

Under our rule four conditions must be present to make the last-clear-chance doctrine applicable: "(1) that the injured party has already come into a position of peril; (2) that the injuring party then or thereafter becomes, or in the exercise of ordinary prudence ought to have become, aware not only of that fact but also that the party in peril either reasonably cannot escape from it or apparently will not avail himself of opportunities open to him for doing so; (3) that the injuring party subsequently has the opportunity by the exercise of reasonable care to save the other from harm; and (4) that he fails to exercise such care." *Fine* v. *Connecticut Co.*, 92 Conn. 626, 631, 103 Atl. 901; *Richard* v. *New York, N. H. & H. R. Co.*, 104 Conn. 229, 235, 132 Atl. 451.

In substance, the charge met the first two conditions. It did not meet the third, nor, in consequence of this, the fourth condition completely. The instruction was that if conditions one and two were found it was defendant's duty to have stopped the car and avoided the accident if he could, and that he failed to do so. This limited the duty of the defendant to the stopping of the car, but the measure of its duty was to exercise reasonable care to save the decedent from harm whether by stopping the car or by any other means, if it had the opportunity. If the sounding of the gong or bell, or the slackening of the speed, would have saved the decedent it was the duty of the motorman to have given such warning or to have so con-

trolled the speed. It may well be that there was no opportunity to have stopped the car, but the slackening of its speed from the time when the decedent signalled would have enabled her to take the two or three steps necessary to have taken her out of the zone of danger, or the warning by gong or bell would have apprised the decedent that the motorman desired the decedent to get out of danger, and thus enabled her to either remain outside the zone of danger, or to step back if she had already entered this zone. The application of these considerations is, of course, dependent upon whether the motorman, if he had been keeping a proper lookout, should have seen the decedent's signal, and when he should have realized the decedent was in peril. If the motorman could only see eight feet ahead of his car and was operating it at a speed of fifteen miles an hour without purposing to stop at this stopping point, or to reduce his speed, and did not in fact see the decedent until the car was within five or six feet of her, there was no opportunity thereafter to have saved the decedent and the last-clear-chance doctrine would have no application to the situation. The complaint sufficiently notified the defendant that the plaintiff would claim a recovery under the last-clear-chance doctrine. The defendant does not contest the plaintiff's right to make this claim and the trial court recognized this right. The failure of the court to include in its instructions condition three and condition four as applicable thereto, was a harmful error.

The court also, in instructing the jury upon the subject of the contributory negligence of the decedent, said: "There is no further evidence as to how long she stayed on the northbound track. . . . There is no evidence as to whether she had been there for some time or whether she had just come there." This was

a mistaken view of the facts in evidence; its materiality must be conceded and nowhere in the charge was the misstatement corrected.

The finding states: "When the southbound car left Bunker Hill Avenue [which was one thousand feet from this stopping point] the decedent left the platform and stood between the rails of the north set of tracks; she looked toward the oncoming car and as it approached her she lifted her right hand and signalled said car to stop; the operator of the street car saw or ought to have seen her in this position giving the signal had he been keeping a proper lookout, and he ought to have known that she was a prospective passenger and desired to board his car." This paragraph is somewhat in conflict with the paragraph which recites that, "because of interference by headlights of oncoming autos, the operator could see only eight feet ahead of him as he operated said car from Bunker Hill Avenue." Again, attributing the failure of the operator of the car—because of the automobile lights—to see more than eight feet ahead of the car, conflicts with a preceding paragraph which recites: "The operator did not pull down the curtain in back of him, provided by the defendant, although the defendant's rules required that said curtain must be down, when the lights inside the street car were lighted, and it was this failure to do this that caused his view ahead to be impaired." The two paragraphs read together attribute the failure of the motorman to see more than eight feet ahead of the car, to both the headlights of oncoming autos, and his own negligence in not pulling the curtain back of him down. The two paragraphs should also be read in connection with the finding that the gasoline station at the intersection of Carter Avenue with Watertown Avenue on the west side of the highway together with an arc

street light which stood on the south side of the inter-
section illumined the highway, the two sets of tracks,
the path across them, the platform and the area near
and surrounding the white pole on the easterly side of
the tracks and the further finding that the artificial
light from the gasoline station was sufficient to show
the decedent and her movements to the operator.
There is no necessary conflict between the finding
that the motorman could see only eight feet ahead
of his car and the finding that the artificial light of
the gas station and the arc light illumined the plat-
form and the north track between whose rails stood
the decedent. The distance from the point where the
automobiles were traveling and the place where the
decedent was signalling was about fourteen feet. It
was a question of fact for the jury whether under all
of these circumstances the rays from the automobiles
so seriously interfered with the vision of the motorman
on the southbound track, whose west rail was at least
two and one half feet distant from the line of ap-
proaching automobiles, as to have prevented his see-
ing the decedent standing in the northbound track,
about fourteen feet east of the line of automobiles.

In charging upon the subject of the contributory
negligence of the decedent, the court neglected to in-
struct the jury as to some of the important facts the
decedent was entitled to assume in regard to the mo-
torman's operation of the car and which the jury
should have considered in determining whether the
decedent's negligence materially contributed to her in-
juries and death. Two of the requests to charge cov-
ering some of these facts should have been given sub-
stantially in this form: If you find the existence of
danger to the decedent in standing on the highway
west of the southbound track awaiting the southbound
car and the defendant knew or ought to have known

this, "these conclusions must be taken in consideration by you as to determining whether or not the decedent acted as a reasonably prudent person in taking her position at the white pole on the easterly side of the tracks to await the coming of the car." If you find "the plaintiff's intestate exercised reasonable care in signalling the trolley car of her desire to become a passenger, she was entitled to assume that the motorman operating the car with due care would see her signal and control the progress of the car accordingly." So too, the jury should have been instructed that the decedent was entitled to assume that the motorman would, in the exercise of reasonable care in the operation of the car, have his car under control, and under the circumstances present, slacken its speed when approaching the stopping point and that these assumed facts should be considered by them in order to determine whether the decedent acted as a reasonably prudent person, or was contributorily negligent.

The court instructed the jury that the plaintiff must prove all his allegations by a fair preponderance of the evidence. There were at least eight acts of negligence which were alleged in the complaint. Taken literally this instruction required the jury to have found each of these acts proven before a verdict could be rendered for the plaintiff. The instruction was erroneous. We have held that this instruction would not be reversible error "where, from the charge as a whole, the jury must have understood the correct rule to be that proof of any one of the several acts alleged was sufficient ground for recovery." *Pratt, Read & Co. v. New York, N. H. & H. R. Co.,* 102 Conn. 735, 130 Atl. 102. We have searched the charge in vain to find where this instruction was corrected, explained or amplified. At the conclusion of the charge the court

said: "Now as I have said, if you find that the plaintiff has not sustained the burden of proof in any of these particulars I have mentioned, your verdict must be for the defendant." If the jury recalled the earlier instruction, it must have understood the later instruction, by way of summation, as emphasizing the earlier instruction. To hold the instruction harmless, we must find that the jury disregarded the instruction and from their own understanding applied the correct rule of law. This we cannot do.

The ruling on evidence complained of as to the exclusion of the declaration of the plaintiff's decedent when she left the gasoline station, that she was going to take the street car, was erroneous, under § 5735 of the General Statutes, but its exclusion was a harmless error, since the fact that this was her purpose was one of the indisputable facts in the case. Similarly, the danger to one about to board a southbound car when standing on the highway awaiting the car was also an indisputable as well as an obvious fact and the ruling excluding this harmless.

The plaintiff's offer to prove that the defendant had knowledge of specific instances of persons being injured and killed by automobiles while standing in the highway waiting for southbound cars was admissible to show the danger to prospective passengers and that defendant knew of this and that in consequence the passengers waited for these cars at the white pole on the platform east of the northbound track. All of this evidence was excluded. It was admissible to show knowledge of the conditions of danger, which would require a higher degree of care on the part of the motorman in the operation of his car at this point, in keeping a lookout for passengers boarding the car, in the slackening of the speed of the car, and in keeping it under more immediate control, even to the point

of stopping the car before reaching the passenger about to board it. "Evidence that other accidents of which the city had notice, had been caused by the displacement of the same silent policeman or guidepost, is admissible as tending to show knowledge of conditions affecting the degree of diligence which may reasonably be required of the city in removing the obstruction after notice." *Aaronson* v. *New Haven,* 94 Conn. 690, 110 Atl. 872; *Taylor* v. *Monroe,* 43 Conn. 36. For the purpose offered, the exclusion of this evidence cannot be held to have been harmless.

Similarly, the evidence of the custom of passengers on southbound cars to stand on the platform on the east side of the track should have been admitted. It is true the court has found that plaintiff offered evidence to prove this fact and that defendant knew of this custom, but it cannot be found from the record that this was an indisputable fact in the case, nor that the evidence upon this point was so conclusive as to have made this offer unnecessarily cumulative. Unless one of these conclusions could be reached, or the charge corrected, the ruling could not be held harmless.

There is error and a new trial is ordered.

In this opinion the other judges concurred.